## No. 2292.

## W. E. WOODHOUSE *v.* RIO GRANDE RAILWAY COMPANY.

1. RAILWAYS—STATUTE CONSTRUED.—The laws giving penalties for receiv-- ing more than the maximum rates for transportation of passengers and freights by railway companies, in force prior to the passage of the Act of April 10, 1883, did not make the willfulness of the charge a fact on which the right to recover depended. To relieve against this hardship, the proviso to the tenth section of that Act was inserted.
2. SAME.—Under Article 4257, Revised Statutes, the amendment thereto of April 19, 1879, and the Act of April 10, 1883, it is only in cases of unjust discrimination by railway companies that the penalty against them is given.
3. SAME—STATUTE CONSTRUED.—Thus protected as railway companies are from liability for inadvertent discrimination in the management of their roads, there was no necessity for further protection, such as is given in the proviso to the tenth section of the Act of April 10, 1883.
4. SAME.—It is only when an overcharge for transportation, or a charge not permitted by law, is made by a railway company that notice to the company and a refusal to refund are required, before an action to recover the penalty can be maintained.
5. SAME.—When intention, design or knowledge at the time an act is done, is an element essential to liability for the act; to require notice to be given by the injured party, before the intentional wrong doer could be made liable, would be to require the doing of a useless thing.
6. SAME—NOTICE OF UNJUST DISCRIMINATION.—No notice is required by the statute to be given to a railway company in cases of unjust discrimination in freight charges, and the proviso to the tenth section of the Act of April 10, 1883, has application only in cases in which charges for freight or passengers in excess of the maximum rates fixed by law, have been made.
7. RAILWAY COMPANIES.—Railway companies voluntarily assume duties to the public from which they can not free themselves by surrendering the management and control of their roads to other persons, in the absence. of such law as would permit them; and there is in Texas no statute according such a privilege.

APPEAL from Cameron.    Tried below before the Hon. J. C. Russell.

*Stanley Welch* and *McCampbell & Givens,* for appellant, cited General Laws 1883, chapter 70, section 10, page 70; International & Great Northern Railroad et al. v. Pichard, 2 Texas Law Re-- view, 164; Galveston, Harrisburg & San Antonio Railway Com--

pany v. Gage, 5 Texas Law Review, 138; Notes to State v. Western North Carolina Railway Company, 22 American and English Railway Cases, 60; Missouri Pacific Railway Company v. Raines & Heard, 5 Texas Law Review, 765; Railroad Company v. Brown, 17 Wallace, 445; Louisville E. and St. Louis Railway Company v. McVay, 98 Indiana, 391; Wharton on Agency, sections 454–457.

*Wells & Hicks* and *Waul & Walker*, for appellee, on their proposition that when the road bed, property and franchises, management and control of a railroad are taken possession of by the trustees of its bond holders, they, not the company, are liable for the wrongful acts of themselves and their agents, while the road is under their control and management, cited Pierce on Railroads, 285; Jones on Railroad Securities, section 370; Woods on Railroads, 1629; Daniels v. Hart, 118 Massachusetts, 543; Ballou v. Farnum, 9 Allen, 47; State v. Railroad, 67 Maine, 48; Sprague v. Smith, 29 Vermont, 421; Rogers v. Wheeler, 43 New York, 598; Turner v. Railroad Company, 74 Missouri, 603.

STAYTON, ASSOCIATE JUSTICE.   This action was brought by appellant to recover the penalty imposed by the Act of April 10, 1883, on any railroad company, for unjust discrimination in freight charges, and to recover the sum alleged to have been demanded and paid in excess of that demanded of and paid by other persons.

The statute provides that "if any railroad company shall charge one person more for transporting freight of the same class, in equal or less quantities, over its road, for the same or a less distance, than it charges another for the same or a greater distance, all such discriminating rates, charges or collections, whether made directly or by means of any rebate or other shift or evasion, shall be considered and taken as *prima facie* evidence of extortion and unjust discrimination, which is hereby prohibited and declared unlawful, and any railroad company or companies, for such violation of law, shall forfeit and pay to the person or persons injured thereby the sum of five hundred dollars, to be recovered before any court having jurisdiction of the amount, in any county through or into which the freight may have been transported."

The several affreightments on which discrimination is alleged to have been made are fully stated.

The petition alleges that notice of the several discriminating charges was given to the railroad company more than twenty days before the action was brought, and that it had failed to repay the sums claimed to be in excess of those charged and collected from other persons for like services. It is alleged, however, that this notice was given to named trustees, for bond holders, who had the entire control and management of the railroad, at the time the discriminations were made. Demurrers, general and special, were filed, and upon hearing sustained. The special demurers questioned the sufficiency of the notice, in that it was not given to "the railway company or to the agent demanding or receiving the same."

The statute provides, "that the penalties prescribed by law for any overcharge shall not be recoverable unless the party aggrieved shall give notice thereof in writing to the railroad company, or to the agent demanding or receiving the same, and said company shall fail within twenty days thereafter, to refund to such aggreived party the amount of such overcharge."

The act of April 19, 1879, provides that "railroad companies may charge not exceeding the rate of fifty cents per hundred pounds per hundred miles over their roads." This with other matters is contained in an amendment to Article 4257, Revised Statutes, which before the amendment contained the same provision. The succeeding Article, for a violation of this law, gives to the injured person the right to recover a penalty of five hundred dollars. (Rev. Stat., Art. 4258.) The statute which we have quoted above, makes notice to the railroad company and its refusal for twenty days to refund, necessary before a recovery can be had "for any overcharge." If we give to the word "overcharge" its ordinary signification, it means a charge of more than is permitted by law; and it is only when such a charge is made that notice and refusal to refund are required, before an action to recover the penalty can be maintained.

It is not claimed, in this case, that a rate higher than fifty cents per hundred pounds per hundred miles was charged and received, but that a forbidden discrimination was made. There may be an over charge without discrimination, and there may be an unlawful discrimination without an overcharge, *i. e.* without a charge higher than the maximum fixed by law. The laws giving penalties for receiving more than the maximum rates for transportation of passengers and freights, in force

prior to the passage of the Act of April 10, 1883, did not make the willfulness of the charge a fact on which the right to recover depended, and thus operated harshly.

The proviso to the tenth section of the latter act, which requires notice to the railroad company and a refusal by it to refund the sum overcharged, was doubtless inserted for the purpose of relieving the former law of its severity. The penalty was never given for mere discrimination in charges.

Under Article 4257, the amendment thereto of April 19, 1879, as well as under the act of April 10, 1883, it is only in case of unjust discrimination that the penalty was given.

Under the act last mentioned, the discrimination must not only be one unjust, but one *willfully* made, in order to subject a railway company to the penalty.

Thus protected from liability for inadvertent discrimination or for discrimination not unjust, there was no necessity for further protection such as is given by the proviso to the tenth section of the Act of April 10, 1883.

The word "willfully" carries the idea, when used in connection with an act forbidden by law, that the act must be done knowingly or intentionally—that with knowledge the will consented to, designed and directed the act. When intention, design or knowledge, at the time an act is done, is an element essential to liability for the act, to require notice subsequently to be given would be but to require the doing of a useless thing. That the law intends such a notice can never be presumed in the absence of language clearly so declaring.

There is nothing in the language of the statute under consideration requiring notice to be given in cases of unjust discrimination in freight charges, and we are of the opinion that the proviso to the tenth section of the act of April 10, 1883, has application only in cases in which charges for freight or passengers, in excess of the maximum rates fixed by law, have been made.

If, however, this was not true, we are of the opinion, in the absence of some law permitting railroad companies to place their roads in the hands and under the exclusive management and control of other persons, that whosoever is voluntarily permitted to manage and control a railroad, in this State, must be deemed in law the agent of the railroad company upon whom notice may be served. The pleadings in this case sufficiently

show that the person on whom notice was served was an agent of the appellee on whom it might be properly served.

It can not be ascertained, from the record, on what particular ground the demurrers were sustained; but if the court was of the opinion that because the railroad was in the hands of persons representing bond holders the company was relieved from responsibility for their acts in the management of the business of the company, then we are of the opinion that this was error.

Railway companies voluntarily assume duties to the State and to the public which they can not free themselves from by voluntarily surrendering the management and control of their roads to other persons, in the absence of some law which permits them to do so. We know of no such law in this State.

The theory of the defense, in this case, is, that, while railway companies are subject to all the laws of this State made for the purpose of compelling them to discharge their duties to the public faithfully and impartially, so long as they manage and control their own property, they have the power to relieve themselves from liability arising under these laws, by placing their roads under the management and control of other persons. No such theory has foundation in the laws of this State. How far, if at all, a railway company can voluntarily surrender the management and control of its road to other persons, need not be considered in this case; for, be that as it may, every railroad company in this State is liable for the acts of all persons to whom it confides the management and control of its road, as fully as though operated under the immediate control of the agencies provided by its charter. The judgment of the district court will be reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered February 25, 1887.