Andres BOCANEGRA, Appellant,

v.

The STATE of Texas, Appellee.

No. 52896.

Court of Criminal Appeals of Texas.

June 8, 1977.

Brinkley L. Oxford, Edinburg, for appellant.

Oscar R. McInnis, Dist. Atty. and Joseph A. Connors, III, Asst. Dist. Atty., Edinburg, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

Appellant was convicted by a jury of welfare fraud in violation of Article 695c, Section 34, Vernon's Ann.Civ.St. The court assessed punishment at six months in jail and a fine of twenty-five dollars, and probated the sentence.

Article 695c, Section 34 provides:

"Fraudulent assistance; penalty

"Sec. 34. Whoever obtains, or attempts to obtain, or aids or abets any person to obtain, by means of a wilfully false statement or representation or by impersonation, or by other fraudulent means:

"(1) Assistance, services, or treatment to which he is not entitled;

"(2) Assistance, services, or treatment greater than that to which he is justly entitled;

"(3) Or, with intent to defraud, aids or abets in buying, or in any way disposing of the property of a recipient of assistance without the consent of the State Department, or whoever violates Section 32 or Section 33 of this Act, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined any sum not more than One Hundred Dollars ($100) or be imprisoned for not less than six (6) months, nor more than two (2) years, or be both so fined and imprisoned."

Omitting the formal parts, the information alleges that:

"on or about the 30th day of April, A.D. 1974, ANDRES BOCANEGRA did then and there unlawfully obtain assistance and services in an amount greater than to which he was justly entitled, fraudulently, to wit, an over-issuance of bonus coupons in the amount of $708.00 from the Texas Department of Public Welfare by failing to declare earned income of $2,832.56 from his employment at Warshaw Printing Co. in McAllen, to Raymond D. Flores, a representative of the Texas Department of Public Welfare, that because of his misrepresentation of being unemployed he was able to purchase Food Stamps at a lower purchase price than he was entitled such being $2,464.00 of Food Stamps for $729.00 giving him $1,735 worth of bonus coupons, when in fact, had he reported his earned income, he would have been allowed to purchase the same amount of Food Stamps but at a higher price being $1,437.00 which would have resulted in his having received $1,027.00 in bonus coupons instead during the period of August 1, 1973 through April 30, 1974."

We hold that the information is fundamentally defective for failing to allege a culpable mental state. Accordingly, the judgment must be reversed and the prosecution under this information ordered dismissed.

Sections 6.02 and 6.03 of the new Penal Code establish the requirements and definitions of culpability for the Code, and Section 1.03(b) makes it clear that these provisions, as well as the other provisions of Titles 1, 2, and 3 of the Code, apply to

offenses defined by the civil statutes "unless the statute defining the offense provides otherwise." Since nothing in Article 695c, Section 34 "provides otherwise," it is clear that Sections 6.02 and 6.03 apply to this statute.

Section 6.02 of the Penal Code provides in part:

"Sec. 6.02. Requirement of Culpability

"(a) Except as provided in Subsection (b) of this section, a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.

"(b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.

"(c) If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b) of this section, intent, knowledge, or recklessness suffices to establish criminal responsibility."

■ Section 34 of Article 695c does not clearly dispense with a mental element since *willful* conduct and *fraudulent* conduct are part of the offense, and, under subsection (3), an intent to defraud is also a part of the offense.[1] It follows that an intent to defraud is a necessary *prescribed* culpable mental state when welfare fraud is alleged pursuant to subsection (3). However, it also seems clear that subsections (1) and (2) of Section 34 do not prescribe culpable mental states; therefore, either intent, knowledge, or recklessness is necessary to establish criminal responsibility.

■ In reaching this latter conclusion, we find that the words "wilfully" and "fraudulent" in Section 34 do enable us to determine that the statute does not "plainly dispenses with any mental element." V.T. C.A., Penal Code, Sec. 6.02(b). However, because it is impossible to determine which of the four culpable mental states is embraced by the terms "wilfully" and "fraudulent," we hold that these words are not sufficient to prescribe any *specific* culpable mental state. See the Practice Commentary to V.T.C.A., Penal Code, Sec. 6.03, and authorities there cited. Therefore, we conclude that either intent, knowledge, or recklessness is a necessary part of the offense of welfare fraud under subsections (1) and (2). See V.T.C.A., Penal Code, Secs. 6.02(a) and 6.02(b); *Davila v. State,* 547 S.W.2d 606, 608, n. 2 (Tex.Cr.App.1977), and authorities there cited.

To hold otherwise would be to lose much of the beneficial effect of creating four "carefully defined" culpable mental states. See the Practice Commentary to Section 6.03, *supra.* Moreover, such a holding would be in direct conflict with the explicit language of Section 1.03(b), *supra,* which extends the provisions of Sections 6.02 and 6.03 to offenses outside the Penal Code.

■ Turning to the case before us, it is clear that this prosecution was under subsection (2) of Section 34; thus, the State was required to prove that the appellant acted intentionally, knowingly, or recklessly: This is an element of the offense. *Ex Parte Winton,* 549 S.W.2d 751 (Tex.Cr.App., No. 54,508, delivered April 27, 1977); *Ailey v. State,* 547 S.W.2d 610 (Tex.Cr.App.1977), and authorities there cited. Thus, as we held in *Ex Parte Winton, supra,* at 752:

"Where a culpable mental state is an element of the offense, failure to allege this element renders the indictment fundamentally defective."

■ We hold that the State was required to allege intent, knowledge, or recklessness in the information and the failure to do so was fundamental error,[2] since "Everything

---

1. Clearly, under this Court's holding in *Teniente v. State,* 533 S.W.2d 805 (Tex.Cr.App. 1976), such an intent alleges a culpable mental state under Section 6.03(a).

2. We are aware of the rule that ordinarily a charging instrument is sufficient if it alleges the offense in the language of the statute. *Baldwin v. State,* 538 S.W.2d 109, 111 (Tex.Cr. App.1976). However, this is an instance where legislative intent, as expressed in Sections

should be stated in an indictment which is necessary to be proved."[3] Art. 21.03, Vernon's Ann.C.C.P.; *Ex Parte Cannon,* 546 S.W.2d 266, 273 (Tex.Cr.App.1976) (opinion on State's Motion for Rehearing); *Ex Parte Winton,* supra; *Ailey v. State,* supra; *Davila v. State,* supra.

The judgment is reversed and the prosecution under this information ordered dismissed.

DOUGLAS, Judge, dissenting.

The majority reverses the conviction for welfare fraud in violation of Article 695c, Section 34, V.A.C.S., holding that the information is fundamentally defective for failure to allege a culpable mental state as required by Section 6.02 of the new Penal Code. A careful reading of the information in question and Article 695c, Section 34, supra, shows otherwise.

The information, held defective (without an exception or motion to quash) by the majority, in appropriate part, reads:

". . . on or about the 30th day of April, A.D., 1974, ANDRES BOCANEGRA did then and there unlawfully obtain assistance and services in an amount greater than to which he was justly entitled, *fraudulently,* to wit, an over-issuance of bonus coupons in the amount of $708.00 from the Texas Department of Public Welfare by failing to declare earned income of $2,832.56 from his employment at Warshaw Printing Co. in McAllen, to Raymond D. Flores, a representative of the Texas Department of Public Welfare, that because of his *misrepresentation* of being unemployed he was able to purchase Food Stamps at a lower purchase price than he was entitled such being $2,464.00 of Food Stamps for $729.00 giving him $1,735 worth of bonus coupons, when in fact, had he reported his earned income, he would have been allowed to purchase the same amount of Food Stamps but at a higher price being $1,427.00 which would have resulted in his having received $1,027.00 in bonus coupons instead during the period of August 1, 1973 through April 30, 1974." (Emphasis Supplied)

Article 695c, Section 34, supra, provides:

"Fraudulent assistance; penalty

"Sec. 34. Whoever obtains, or attempts to obtain, or aids or abets any person to obtain, by means of a wilfully false statement or representation or by impersonation, or by other fraudulent means:

"(1) Assistance, services, or treatment to which he is not entitled;

"(2) Assistance, services, or treatment greater than that to which he is justly entitled;

"(3) Or, with intent to defraud, aids or abets in buying, or in any way disposing of the property of a recipient of assistance without the consent of the State Department, or whoever violates Section 32 or Section 33 of this Act, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined any sum not more than One Hundred Dollars ($100) or be imprisoned for not less than six (6) months, nor more than two (2) years, or be both so fined and imprisoned."

The Penal Code provisions dealing with culpability in general are made applicable to other statutes, such as the civil statute in the instant case, by the authority of V.T.C.A., Penal Code, Sec. 1.03(b). Section 6.02 of the Penal Code states that a culpable mental state is required for the commission of an offense unless the statute defining the offense clearly dispenses with any mental element. If the statute defining the offense does not clearly dispense with the requirement of a mental element and does not prescribe a specific mental element, then intent, knowledge or recklessness will suffice to establish criminal responsibility.

---

1.03(b) and 6.02 of the Penal Code, requires greater particularity. See *Johnson v. State,* 547 S.W.2d 599, 601 (Tex.Cr.App.1977), and authorities there cited.

3. This rule applies with equal force to informations. Art. 21.23, V.A.C.C.P., provides: "The rules with respect to allegations in an indictment and the certainty required apply also to an information."

The statute defining welfare fraud, as quoted above, does not clearly dispense with the requirement of a mental element, nor does it fail to prescribe a culpable mental state. The first paragraph of Section 34 prohibits the acquisition of welfare assistance by means of (a) a *wilfully* false statement or (b) by impersonation, or (c) by any other *fraudulent* means. Subsection (3) of Section 34 condemns a person who, *with intent to defraud,* aids or abets in buying or in any way disposing of the property of a recipient of assistance. Each of the enumerated means for violation of the statute has an accompanying mental element.

The information charges that appellant obtained more food stamp bonus coupons than he was allowed by "fraudulently . . failing to declare earned income. . . ." The allegation clearly charges appellant with the acquisition of welfare assistance "by other fraudulent means." The mental element of "intentional" is present.

"Fraud" is defined in Webster's New International Dictionary, 1917, as

"an *intentional* perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him, or to surrender a legal right; a false representation of a matter of fact (whether by words or conduct, by false or misleading allegations, or by concealment of that which should have been disclosed) which deceives and *is intended* to deceive another so that he shall act upon it to his legal injury." (Emphasis Supplied)

"Fraudulent" means to use fraud. Fraud "consists of some *deceitful practice* or *wilful device, resorted to with intent* to deprive another of his right, or in some manner to do him an injury. As distinguished from negligence, it is always positive, *intentional.*" (Emphasis Supplied) Black's Law Dictionary 788 (Revised 4th Ed. 1968).

The fact that it is alleged that appellant "fraudulently" rather than "intentionally" or "knowingly" is of no consequence. As has been shown, "fraudulently" means to do an act or omission "intentionally." Section 2.01 of the Code Construction Act provides:

"Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise shall be construed accordingly."

Section 2.01 of the Code Construction Act is applicable to the new Penal Code pursuant to V.T.C.A., Penal Code, Section 1.05, wherein it states:

"(a) *The rule that a penal statute is to be strictly construed does not apply to this code. The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code.* (Emphasis Supplied)

"(b) Unless a different construction is required by the context, Sections 2.01, 2.02, 2.04, 2.05, and 3.01 through 3.12 of the Code Construction Act (Article 5429b–2, Vernon's Texas Civil Statutes) apply to the construction of this code."

The law has not been changed in regard to using words with same or similar meaning as those found in the statute. In 1973 when the 63rd Legislature enacted the new Penal Code it conformed certain articles of the Code of Criminal Procedure so that it was in harmony with the new Penal Code. Article 21.17, V.A.C.C.P., provides:

"Words used in a statute to define an offense need not be strictly pursued in the indictment; *it is sufficient to use other words conveying the same meaning, or which include the sense of the statutory words.*" (Emphasis Supplied)

In *White v. State,* 83 Tex.Cr.R. 31, 201 S.W. 186 (1918), it was held that an indictment under the 1911 Penal Code, Article 1351, for theft from the person, must allege that the property was taken from the person of another, and it is not sufficient to allege that it was taken "from the possession of the person" of another. This Court in *White* said:

"It is a familiar rule of construction, where the statute uses words, those same words must be used in an indictment, and, if not, *then words of similar or more*

*potent force* than those used in the statute must be employed in order to charge the offense." (Emphasis Supplied)

"Fraudulently" by definition certainly encompasses the same and more than "intentionally" or "knowingly" as defined in V.T.C.A., Penal Code, Section 6.03. As this Court again reiterated in *McClane v. State,* 170 Tex.Cr.R. 603, 343 S.W.2d 447 (1961), cert. denied 365 U.S. 816, 81 S.Ct. 698, 5 L.Ed.2d 695:

> "It is the rule that where a word not in the statute is substituted in the indictment for one that is, the indictment is sufficient if the word substituted is equivalent to the word used in the statute. 1 Branch's Ann.P.C.2d Ed, para. 515, page 496." *Lewis v. State,* 527 S.W.2d 533 (Tex.Cr.App.1975)

Further, even if it could be said that "intentionally" or "knowingly" were words with a technical or particularized meaning within the ambit of Section 2.01 of the Code Construction Act, it would again be of no consequence. The word "fraudulently" embraces intent and knowledge as well as purposeful misrepresentation and wilful deceit. It is an encompassing general term which embraces the specific term and is authorized for use in an indictment by Article 21.12, V.A.C.C.P., which provides:

> "When a statute defining an offense uses *special* or *particular* terms, indictment on it may use the general term, which, in common language, embraces the special term. . . ."

See also, *Lewis v. State,* supra.

*Ex parte Cowden,* 74 Tex.Cr.R. 449, 168 S.W. 539 (1914), held that the word "wilful" may be substituted for the statutory word "knowingly" since the word "knowingly" as used in the statute prohibiting a person from allowing livestock to run at large meant that the act must have been done within the knowledge of the person charged with the intent to commit the act and the word "wilful" carried that meaning and more. This Court in *Cowden* went on to note that in *Garza v. State,* 47 S.W. 983 (Tex.Cr.App.1898), it was held that the word "wilful" as used in the statute (perjury) was synonymous with "knowingly," citing excerpts from Words and Phrases, Volume 8, page 7474, among which was *Woodhouse v. Rio Grande Railway Company,* 67 Tex. 416, 3 S.W. 323 (1887), wherein it was said that "wilfully", as used in connection with an act forbidden by law, *means that the act must be done knowingly or intentionally,* and that the act was committed with knowledge, and that the will consented to, designed and directed the act.

The meaning of the word "intent" arose also in *Gallegos v. State,* 152 Tex.Cr.R. 508, 215 S.W.2d 344 (1948), wherein the defendant was charged with assault with intent to murder. Complaint was made of the trial court's refusal to define the word "intent" in its charge. In overruling Gallegos' allegation of error this Court held that "intent" is a word of such common and generally accepted meaning that no necessity should exist for a further definition thereof. Likewise, it should be evident to all that to fraudulently perform or fail to perform an act is intentional and wilful.

The information should charge an offense in plain and intelligible words with such certainty as to enable the accused to know what he will be called upon to defend against and to enable him to plead the judgment that may be given on it in bar of any further prosecution for the same offense. *Moore v. State,* 532 S.W.2d 333 (Tex.Cr.App.1976). An indictment or information which charges the elements of an offense in substantially the same terms as the statute is sufficient. We should hold that the information in the instant case sufficiently informed the appellant that he was charged with unlawful acquisition of welfare assistance by fraudulent means. See *Teniente v. State,* 533 S.W.2d 803 (Tex. Cr.App.1976).

The judgment should be affirmed.