Andrew G. **HUIZINGA**,
Plaintiff–Appellee,

v.

**UNITED STATES** of America, Defendant & Counterclaim Plaintiff–Appellant,

**Ralph Scotese; Larry L. Vanderbeek**,
Counterclaim Defendants–
Appellees.

No. 94–1684.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 11, 1995.

Decided Oct. 24, 1995.

David J. Gass, Mark E. Rizik (argued and briefed), Miller, Johnson, Snell & Cumminskey, Grand Rapids, MI, for Andrew G. Huizinga.

Gary R. Allen, Acting Chief (briefed), Kenneth L. Greene, Frank P. Cihlar (argued), Billie L. Crowe, U.S. Department of Justice, Appellate Section, Tax Division, Washington, DC, for U.S.

Willy Nordwind, Jr., Reed, Stover & O'Connor, Kalamazoo, MI, for Ralph Scotese.

James Moskal, Steven R. Heacock, Warner, Norcross & Judd, Grand Rapids, MI, for Larry L. Vanderbeek.

Before: CONTIE, NELSON, and RYAN, Circuit Judges.

CONTIE, J., delivered the opinion of the court, in which RYAN, J., joined. NELSON, J. (pp. 145–46), delivered a separate concurring opinion.

CONTIE, Circuit Judge.

The United States appeals the district court's tax penalty determination. We affirm.

I.

Allied Mechanical Services, Inc. ("AMS"), is a plumbing and heating contractor in Kalamazoo, Michigan. Plaintiff-appellee Andrew Huizinga ("Huizinga") served as AMS's President and Chairman of the Board. In 1979, Huizinga stepped down as AMS's President but retained his position as Chairman of the Board. Unfortunately, AMS encountered severe financial problems thereafter. Concerned about AMS's future, American National Bank, AMS's principal secured creditor, persuaded Huizinga to serve, once again, as AMS's President in February 1984.

Larry Vanderbeek started working for AMS in the late 1960's and, by late 1979, was AMS's Vice President and a member of its Board of Directors. Ralph Scotese, a certified public accountant, began working for AMS in 1974. Prior to his resignation on July 24, 1984, Scotese was AMS's Executive Vice President.

On or about July 31, 1984, Huizinga learned that AMS had failed to remit to the Internal Revenue Service ("IRS") the federal income tax and social security payments that AMS had withheld from its employees' pay for the first three quarters of 1984. The parties agree that, when Huizinga learned of AMS's omission, there were no funds in AMS's bank accounts. Shortly thereafter, American National Bank informed AMS that it would offset any funds that AMS deposited against AMS's outstanding loan balance. AMS thereafter opened an account at Comerica Bank without informing American National Bank.[1] Unfortunately, Huizinga was not able to reverse AMS's financial deterioration. In October 1984, AMS filed a petition seeking reorganization pursuant to Chapter 11 of the Bankruptcy Code.

On November 15, 1990, the IRS assessed a tax penalty of $1,021,496.25 against Huizinga for his failure to remit the funds that AMS held in trust for its employees for the first three quarters of 1984. On January 29, 1991, Huizinga paid the IRS $202.25 (one employee's social security and federal income tax

---

1. During August and September of 1984, AMS deposited more than $550,000 in its Comerica account. Approximately $70,585 of this figure was paid to the United States as current payroll taxes (i.e., withholding taxes on wages earned after July 31, 1984). The remaining money (more than $480,000) was paid to creditors other than the United States.

withholdings for one quarter). That same day, Huizinga asked the IRS to nullify the $1,021,496.25 penalty and requested that the IRS refund the $202.25 that he had remitted that day. On April 15, 1991, the IRS rejected Huizinga's requests.

On May 21, 1991, Huizinga filed this tax refund suit alleging that he was not a "responsible person" pursuant to section 6672 of the Internal Revenue Code. The United States, in turn, filed a counterclaim against Huizinga, Vanderbeek and Scotese alleging that the three men were responsible for AMS's failure to remit the withholding taxes for the first three quarters of 1984. Though Scotese conceded liability, Huizinga and Vanderbeek did not.

The United States filed a motion for summary judgment against Huizinga and Vanderbeek. Huizinga, in turn, filed a cross-motion for partial summary judgment; Vanderbeek joined in Huizinga's motion. On June 23, 1993, the district court granted the parties' summary judgment motions in part, and denied them in part:

> This Court agrees that there is a triable issue of fact as to whether Vanderbeek should be considered a "responsible person" under section 6672. On the other hand, there is no genuine issue as to any material fact as to Huizinga's "responsible person" designation for the relevant first three quarters of 1984.
>
> . . . .
>
> Finding that Huizinga is a "responsible person," this Court must turn to the second requirement under section 6672: whether he "wilfully" failed to pay over to the government the amount of taxes due. Wilfulness is "present if the responsible person had knowledge of the tax delinquency and knowingly failed to rectify it when there were available funds to pay the government."
>
> . . . .
>
> . . . Huizinga asserts that there were three types of encumbrance which precluded him from using all AMS's "after-acquired" funds except $74,143.35 for the tax liability. He explains that: (1) some of the funds were used to pay "current" federal or state

payroll withholding taxes (those taxes coming due after July 31, 1984); (2) some were encumbered by the Michigan Builders Trust Fund Act; and (3) some were subject to the principal secured creditor's (American National Bank's) security interest and cash collateral agreement.

> . . . .
>
> First, this Court agrees with the parties that the portion of the "after-acquired" funds that was used to pay the "current" federal payroll withholding taxes must be considered "encumbered." . . .
>
> . . . .
>
> Next, this Court believes that the portion of the "after-acquired" funds "impressed" with a trust pursuant to the Michigan Builders Trust Fund Act . . . was "encumbered." Huizinga has demonstrated that the Act "creates a security device in the form of a 'trust fund' for the benefit of the owner and subcontractors on construction projects." That security device appears to restrict the use of the "after-acquired" funds here. Further, Huizinga has shown—and the United States has pointed little to the contrary—that the federal government did not have a superior interest in the "after-acquired" funds held under the Act. Thus, the sum paid pursuant to the Act was not available for Huizinga's pre-existing tax liability.
>
> Finally, this Court does not think that the record presented here is sufficiently clear to determine whether the funds allegedly controlled by the principal secured creditor's (American National Bank's) security interest and cash collateral agreement were "encumbered." [T]his issue requires further clarification at trial.
>
> In short, the question concerning the exact extent of Huizinga's pre-existing tax liability must be left for trial.

District Court's Opinion at 6–17 (citations omitted).

Though the United States conceded that the Michigan Building Contract Fund Act creates a security device in the form of a trust fund for the trust's beneficiaries (i.e., laborers, materialmen and subcontractors), the United States asked the district court to reconsider its finding because, the IRS ar-

gued, the United States held a superior interest in the trust funds. The district court rejected the United States' motion for reconsideration.

The parties subsequently entered into settlement negotiations wherein: Huizinga and Vanderbeek agreed to pay the United States $125,000; the United States agreed to appeal the Michigan Building Contract Fund Act encumbrance issue; and, the parties agreed that, if the United States prevails on its appeal, Huizinga and Vanderbeek will pay the United States an additional $175,000. The district court, in accordance with the parties' settlement agreement, entered judgment against Huizinga and Vanderbeek for $125,000. The United States appealed.

## II.

### Standard of Review

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A district court's grant of summary judgment is reviewed de novo. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). In its review, this court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

The moving party has the burden of establishing that no genuine issue of material fact exists. *Id.* Nevertheless, in the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings but must come forward with some probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). The dispute must be genuine and the facts must be such that, if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party. *60 Ivy St. Corp.*, 822 F.2d at 1435. If the disputed evidence "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

### The Trust Funds

The Michigan Building Contract Fund Act provides:

Sec. 1. In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

Sec. 2. Any contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefor, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid, and may be prosecuted upon the complaint of any persons so defrauded, and, upon conviction, shall be punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment in a state prison at the discretion of the court.

Sec. 3. The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment by him of all moneys due or so to

become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud.

Mich.Comp. Laws §§ 570.151–570.153.

■■■ "The Michigan Building Contract Fund Act imposes a 'trust' upon the building contract fund paid by any person to a contractor or subcontractor for the benefit of the person making the payment, contractors, laborers, subcontractors and materialmen." *In re Johnson*, 691 F.2d 249, 252 (6th Cir. 1982) (citation and footnote omitted). "The contractor or subcontractor receiving the payments is the 'trustee.'" *Id.* (citation omitted). "The statute imposes a duty upon the trustee to use the money in the building contract fund to first pay laborers, subcontractors and materialmen on the particular project for which the funds were deposited before he uses the fund for any other purpose." *Id.* (citations and footnote omitted).

■■■ "Any contractor or subcontractor, who, with intent to defraud, retains or uses any portion of the building contract fund for any purpose other than to first pay the trust beneficiaries, is guilty of a felony in appropriating trust funds to his own use." *Id.* (citation omitted). "The appropriation by a contractor or subcontractor of any monies in the building contract fund before the payment of monies due or to become due trust beneficiaries, is evidence of intent to defraud." *Id.* (citation and footnote omitted). "That the statute does not mandate any particular form or procedures in handling trust funds neither undercuts the validity of the trust nor renders the statute unconstitutionally vague." *Id.* (citation omitted). Moreover, "[t]he Building Contract Fund Act may give rise to a civil cause of action as well as criminal penalties." *Id.* (citations omitted).

■■■ "The trust relationship is unambiguously imposed on a contractor or subcontractor by the language of the statute." *Id.* "The trust res is clearly defined as the monies paid by any person into the building contract fund." *Id.* "The trustee is charged with specific affirmative duties, including paying out trust funds in accordance with the statutorily imposed priority scheme, not using funds for its own purposes so long as

trust beneficiaries, laborers, subcontractors and materialmen remain unpaid and using funds obtained for a specific project to first pay for labor and materials furnished for that specific project." *Id.* at 252–53. "The fiduciary relationship established by the Building Contract Fund Act arises at the time any monies are paid to the contractor or subcontractor whether or not there are any beneficiaries of the trust at that time and continues until all of the trust beneficiaries have been paid." *Id.* at 253 (citations omitted). *See also id.* ("Until some person makes a payment into the building contract fund, the contractor or subcontractor is liable to suppliers and laborers solely based on contract. Once a statutory trust is activated by payment into a building contract fund, the statute prohibits the contractor or subcontractor's use of monies received for a particular project for anything other tha[n] first paying laborers and suppliers on that project.").

In *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir.1979), a contractor disbursed money from a building contract fund to subcontractors on the project. When the contractor filed for bankruptcy protection, the trustee sought to set aside these payments as preferential transfers. This court agreed with the subcontractors that the payments could not be set aside because the subcontractors held title to the money in the building contract fund as trust beneficiaries under the Michigan Building Contract Fund Act. *Id.* at 644–47. *See also In re Johnson*, 691 F.2d at 254 ("[T]he law of Michigan forbade [the contractor's] use of funds deposited in the building contract fund for his own purposes without first discharging his indebtedness, actual and anticipated, to laborers, subcontractors and materialmen on the particular project for which funds were received."). *See generally id.* at 257 ("Because Johnson is a contractor who was the recipient of monies paid into building contract funds, he is charged with knowledge of his status as a trustee under the Michigan Building Contract Fund Act and his duties under that Act. In breaching his duty to pay materialmen ... in accordance with the statutory priority scheme, he created a debt which is nondischargeable under section 17(a)(4) of the Bankruptcy Act.").

Sections 3102 and 3402 of the Internal Revenue Code require employers to withhold social security and federal income taxes from their employees' wages. Pursuant to section 7501 of the Internal Revenue Code, the withheld money is held in trust for the United States until paid to the government. If an employer withholds these trust funds but fails to remit them to the United States, the employee is nevertheless credited with having paid the taxes and the government may not require any additional payment from the employee. However, any person responsible for collecting and paying such taxes to the government that wilfully fails to do so is subject to a penalty equal to 100% of the unpaid taxes. Specifically, the relevant statute provides that a person is subject to the penalty if he is responsible for the employer's financial affairs and is wilful in his failure to collect, account for, or remit the taxes to the government. 26 U.S.C. § 6672.

A responsible person who first becomes aware of a past due withholding tax liability after the liability has accrued is considered "wilful" (for purposes of section 6672) if he fails to use all unencumbered funds that come into his possession thereafter to pay the delinquent taxes. Funds are considered encumbered "only where the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and [the] legal obligation is superior to the interest of the IRS in the funds." *Honey v. United States*, 963 F.2d 1083, 1090 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 676, 121 L.Ed.2d 598 (1992).

Though the district court held that Huizinga was a responsible person during the period in question, the court held that Huizinga was not wilful in failing to pay the overdue withholding taxes because the Michigan Building Contract Fund Act encumbered

his use of the available funds.[2] We agree with the district court's determinations.

The Michigan Builders Trust Fund Act was enacted "to protect the owner and those whose labor and materials make the performance of a construction contract possible and give rise to the owner's obligation to pay." *Selby v. Ford Motor Co.*, 590 F.2d at 644. The effect of the statute is to prevent the funds from becoming the property of the building contractor by creating a trust to hold the funds and by making the contractor the trustee. *Id.* As a result, the funds held by a contractor in trust pursuant to the Act are not the property of the contractor and cannot be brought into a bankruptcy estate. *Id.* at 646–47. This same reasoning suggests that AMS could not use the funds held in trust (pursuant to the Act) to satisfy its own delinquent tax liabilities. Simply stated, Huizinga was clearly under a legal obligation to use the after-acquired funds that were held in trust to pay the Act's intended beneficiaries. Because the relevant funds were legally encumbered by the Michigan Builders Trust Fund Act's provisions, and because the IRS's interest in the funds does not supersede the Act's legal obligations to its intended beneficiaries, the United States' assignment of error must be rejected.

Accordingly, we AFFIRM.

DAVID A. NELSON, Circuit Judge, concurring.

I agree that the decision of the district court should be affirmed, but only because the government failed adequately to present in the district court the argument it has presented here.

In simple terms, the government's argument is this. The Michigan Building Contract Fund Act, adopted in the depths of the Great Depression, antedates both the Social Security Act and federal income tax withholding. Under current conditions, withhold-

2. Pursuant to *Kinnie v. United States*, 994 F.2d 279 (6th Cir.1993), a district court may enter judgment against a responsible person who wrongfully fails to pay over withholding taxes for an amount that exceeded the cash on hand of the corporation on the date that the responsible person learned that the corporation had not been paying or remitting its withholding taxes: "[B]e-

cause the record shows that over $500,000 in unencumbered funds passed through EMTS and Great Lakes after Kinnie learned of the tax delinquency, the district court did not err in rendering a judgment against Kinnie under section 6672 in an amount greater than the monies on hand at EMTS at the time Kinnie first learned of the tax delinquency." *Id.* at 285.

ing taxes are simply part of a laborer's pay. In paying withholding taxes over to the federal government, a contractor is thus paying its employees—something the Michigan Act was obviously not designed to prohibit.

"The design of the Act is to prevent contractors from juggling funds between unrelated projects. By imposing a trust as to monies paid the contractor, the statute insures that funds for a particular project will be used for that project alone." *People v. Miller*, 78 Mich.App. 336, 259 N.W.2d 877, 881 (1977). To the extent that a contractor might satisfy a withholding tax obligation arising out of activities on one project with funds received by the contractor in connection with another project, the contractor would be misapplying "encumbered" funds. But funds received by the contractor in connection with a particular project are not "encumbered" in such a way as to prevent the contractor from applying the funds against a withholding tax obligation related to the same project—and this is true even when the obligation is overdue. "The primary duty of the trustee is to insure that trust funds are spent on the particular project for which trust funds were deposited." *Weathervane Window, Inc. v. White Lake Construction Co.*, 192 Mich.App. 316, 480 N.W.2d 337, 341 (1991).

The burden of demonstrating that funds are encumbered rests on the taxpayer. See *Collins v. United States*, 848 F.2d 740, 742 (6th Cir.1988); *Honey v. United States*, 963 F.2d 1083, 1087 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 676, 121 L.Ed.2d 598 (1992). An affidavit executed by Daniel Huizinga establishes that the funds which the government contends should have been applied against withholding tax liability were used to pay other "Builder's Trust Fund Expenses," but the affidavit does not show that any of these expenses pertained to a project for which the contractor did not have an unsatisfied withholding tax obligation at least as great as the expense in question. Neither is such proof to be found elsewhere in the record.

In the district court the government obliquely suggested that withholding taxes could be paid out of a Michigan Builder's Trust. The government did not, however, argue that the taxpayers had failed to demonstrate that the expenses in question were incurred on projects other than projects to which the delinquent taxes pertained. If the government had suggested this critical failure in proof to the district court, I do not believe that it would have been proper to grant summary judgment to the taxpayers on the encumbrance issue. But because the argument was not presented to the district court, it should not be entertained here.

"It is well-settled that, absent exceptional circumstances, a court of appeals will not consider an argument by an appellant that was not presented to or considered by the trial court." *Estate of Quirk v. Commissioner*, 928 F.2d 751, 757–58 (6th Cir.1991). There do not appear to be any exceptional circumstances militating in favor of a departure from this principle here. Accordingly, I concur in the affirmance of the summary judgment.