TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00622-CV






The State of Texas; the City of Houston, Texas, and

the Transit Authority of Houston, Texas, Appellants


v.


Steve Crawford, a/k/a Steven Lynn Crawford, and

Robert Wills, a/k/a Robert William Wills, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT

NO. D-V-GV-04-000065, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING





O P I N I O N


 Appellants the State of Texas; the City of Houston, Texas; and the Transit Authority
of Houston, Texas (collectively, the "State") sued appellees Steve Crawford and Robert Wills, as
responsible individuals, for the sales tax liability of S. L. Crawford Construction, Inc. Seeking to
establish appellees' individual liability under section 111.016(b) of the Texas Tax Code, the State
asserted that Crawford and Wills willfully failed to pay or cause to be paid the delinquent sales tax
amounts. Following a bench trial, the district court concluded that Crawford and Wills did not act
willfully, and the court entered judgment that the State take nothing by its suit. The State
appeals, asserting that: (1) the district court erred in construing the willfulness requirement of
section 111.016(b) to encompass knowledge, but not reckless disregard of the risk that taxes were
not remitted, (2) the defendant taxpayers should have had the burden of proof on the issue of
willfulness, and (3) the evidence was legally and factually insufficient to support the district court's
judgment on the issue of willfulness. We conclude that the district court properly placed the burden
of proof on the State to establish willfulness. As to the State's first point on appeal, we agree that
the term "wilfully" in section 111.016(b) encompasses both knowledge and reckless disregard. 
However, because we find the evidence sufficient to establish that the defendants did not act with
knowledge or reckless disregard, we affirm the judgment of the district court.


Factual and Procedural Background

 S. L. Crawford Construction, Inc. (the "Company") was engaged in the construction
business in the Houston area, specializing in the interior finish-out of commercial properties. 
Appellees Crawford and Wills were officers of the Company during the events at issue in this suit. 
Crawford formed the Company in 1982, and was its president until 2001 when he became the chief
executive officer. He had ultimate decision-making authority on all Company matters. Wills joined
the Company in 1996, and was its chief financial officer until 2001 when he became the president. 
He reported solely to Crawford. Crawford and Wills made all financial decisions, had check-writing
authority, signed the Company's sales tax returns, and had the authority to hire and fire employees.

 In November 2000, the Texas Comptroller of Public Accounts commenced a
sales tax audit of the Company for the period of October 1, 1997, through September 30, 2000. By
mid-January 2001, the Comptroller had narrowed its inquiry to two construction jobs, only one of
which--the "McCord-Reliant job"--is at issue in this suit.

 In its regular course of business, the Company performed jobs that were subject to
sales tax and jobs that were not subject to sales tax. Similarly, some of the work performed for the
client on the McCord-Reliant job was taxable, and some was non-taxable. The job at issue was
taxable, and the Company collected sales tax from the client in the amount of $158,912.27. 
However, the Company's bookkeeper, Linda Delgado, incorrectly marked the job as non-taxable in
the Company's monthly sales tax worksheets. As a result of this error, the Company's sales tax
returns and payments to the Comptroller for the months that included the McCord-Reliant job did
not include the sales tax collected on the McCord-Reliant job. Thus, the sales tax was collected by
the Company but not remitted to the State.

 Vernon Wallace, a senior auditor for the Comptroller, conducted the sales tax audit. 
When the audit began, Wills executed a limited power of attorney authorizing John P. Wade, an
outside certified public accountant, to act on behalf of the Company with regard to sales tax matters
during the audit period. According to Wills, he "turned everything over" to Wade. During the
course of the audit, Wallace dealt only with Wade in obtaining documentation and an explanation
of the Company's sales tax collections and payments.

 By letter dated March 7, 2001, Wallace informed Wade that the audit was complete
and attached documents showing an unpaid tax amount on the McCord-Reliant job of $179,743.17. 
Wills was copied on the letter. By letter dated April 2, 2001, Wade formally requested a
redetermination hearing on the audit results. Wade did not contest that the McCord-Reliant job was
taxable or that the Company had not paid sales tax on the job. Instead, Wade stated the Company's
intention "to submit documentation that would show the sales tax applicable to this job was timely
paid by [the Company] with a credit from previous periods." In response, as part of the
Comptroller's administrative hearings process, the Comptroller informed Wade that he had
sixty days in which to submit documentation to support the Company's claim regarding preexisting
credits. Wade did not provide any supporting documentation during the sixty-day period or at any
other time. On September 28, 2001, the Comptroller issued a Position Letter regarding the audit,
rejecting Wade's arguments on the McCord-Reliant job because the Company "has presented
nothing to identify and to have properly determined any overpayment [or] any period in which the
overpayment allegedly occurred." Prior to any hearing before the administrative law judge taking
place, Wade announced, by letter dated October 16, 2002, that the Company was withdrawing its
petition for redetermination and requested that the hearing be dismissed. By the Comptroller's order,
the dismissal became final on November 15, 2002, and the tax, penalty, and interest amounts were
"due and payable within twenty (20) days thereafter."

 The Comptroller sent the Company notice of its order, but sent the notice to
the wrong address. The Company had changed addresses at some point in 2001 or earlier in
2002.  According to Crawford and Wills, they did not become aware of the final
determination (or Wade's request for dismissal) until they discovered that the Comptroller had
frozen the Company's bank accounts. (1) On that date, they went in person to the Comptroller's
Houston branch office and proposed an initial payment of $70,000 and the remainder to be paid
within "the next few months." On February 11, the Comptroller obtained $70,000 from the
Company's bank account. Before the end of that month, due to the hold on the Company's accounts
and its impact on the Company's payment capabilities, lines of credit, and customer perception, the
Company went out of business.

 On June 2, 2003, the Comptroller issued a jeopardy determination against Crawford
and Wills in their individual capacities for $179,743.17, plus penalties and interest. According to
Jeremy Davies, an accounts examiner for the Comptroller, the determination to impose individual
liability was based on records showing that during the time period at issue both Crawford and Wills
were officers of the Company, signed the sales tax returns, and had the authority to sign Company
checks. The tax liability was subsequently amended to $158,912.27--the amount actually collected
by the Company--and then reduced by a portion of the $70,000 already paid.

 The State filed suit against Crawford and Wills in district court on January 23, 2004,
and the case was tried without a jury on September 10 and 11, 2007. At trial, under the authority
of section 111.016 of the Texas Tax Code, the State sought $95,817.75 in unpaid sales tax,
plus $25,473.01 in penalties and $62,726.29 in interest. Crawford and Wills conceded at trial
that they were "responsible individuals" with the requisite control over the sales tax payments. 
See Tex. Tax Code Ann. § 111.016(d)(1) (West 2008) (defining "responsible individual"). 
Appellees also stipulated at trial to the amounts alleged due and that the Company had collected the
sales tax at issue. See id. § 111.016(a) (liability applies as to "the full amount collected plus any
accrued penalties and interest"). The only issue was whether Crawford and Wills "wilfully" failed
to pay or cause to be paid the sales tax from the McCord-Reliant job. See id. § 111.016(b).

 The district court entered judgment on October 2, 2007, that the State take nothing
by its suit. In its conclusions of law, the district court ruled that the term "wilfully" requires a higher
mental state than reckless disregard and that the State has the burden of proof on the issue of
willfulness. The State presents four points on appeal: (1) the willfulness requirement of tax code
section 111.016(b) should be construed in accordance with federal law so as to encompass both
knowledge and reckless disregard, (2) defendant taxpayers should bear the burden of proof to
establish their lack of willfulness, (3) the trial court's finding that Crawford and Wills had no actual
knowledge of their failure to pay collected taxes is not supported by legally or factually sufficient
evidence, and (4) the trial court's finding that Crawford and Wills did not recklessly disregard the
risk that collected taxes would not be paid is not supported by legally or factually sufficient evidence.


Applicable Law

 Under section 111.016(a) of the tax code, the Company was obligated to remit to the
State sales tax collected from its clients on taxable jobs. In addition, the Company held the collected
sales tax "in trust" for the State until the taxes were remitted to the State:


(a) Any person who receives or collects a tax or any money represented to be a tax
from another person holds the amount so collected in trust for the benefit of the state
and is liable to the state for the full amount collected plus any accrued penalties and
interest on the amount collected.


Id. § 111.016(a). (2) The State, in this suit, attempts to recover the Company's sales tax delinquency
from Crawford and Wills in their individual capacities, as "responsible individuals" of the Company. 
Under section 111.016(b) of the tax code, a responsible individual can be held liable for a company's
collected, but unremitted, sales tax if he "wilfully" fails to pay the tax:


(b) With respect to tax or other money subject to the provisions of Subsection (a),
an individual who controls or supervises the collection of tax or money from another
person, or an individual who controls or supervises the accounting for and paying
over of the tax or money, and who wilfully fails to pay or cause to be paid the tax or
money is liable as a responsible individual for an amount equal to the tax or money
not paid or caused to be paid.


Id. § 111.016(b).


Definition of Willfulness under Section 111.016(b)

 The State contends that the district court misconstrued the term "wilfully" in
section 111.016(b). In its Conclusions of Law No. 5 and No. 6, the district court held that if the
defendants did not have "actual knowledge," the statute's willfulness standard was not met. In
its first point on appeal, the State asserts that the term "wilfully" encompasses both actual
knowledge and a responsible individual's reckless disregard of the risk that taxes may not be
remitted to the government.

 Section 111.016(b) was enacted by the legislature in 1995, imposing liability
on individuals for a company's unpaid state taxes. See Act of May 3, 1995, 74th Leg., R.S., ch. 87,
§ 1, 1995 Tex. Gen. Laws 872, 872. This court has not yet addressed the meaning of the term
"wilfully" in this statute. (3) The State's position that willfulness under section 111.016(b) includes
both actual knowledge and reckless disregard is based on the assertion that federal tax law defines
willfulness in that manner and the legislature modeled section 111.016(b) after the federal tax law. 
When a Texas statute is modeled after a federal statute, we presume that the legislature intended to
adopt the federal courts' construction of the federal statute. City of Garland v. Dallas Morning
News, 22 S.W.3d 351, 360 (Tex. 2000).

 Section 6672 of the Internal Revenue Code (the "Code") imposes individual liability
on a person who is required to collect, truthfully account for, or pay a tax but who "willfully fails"
to do so. See 26 U.S.C. § 6672(a) (2000). According to federal case law, willfulness under
section 6672(a) requires "a voluntary, conscious, and intentional act, but not a bad motive or evil
intent." Morgan v. United States, 937 F.2d 281, 285 (5th Cir. 1991). Willfulness under the federal
statute may be proven in either of two ways. First, willfulness is normally established by evidence
that the responsible person had knowledge that taxes were due to the United States and yet paid other
creditors. See Barnett v. Internal Revenue Serv., 988 F.2d 1449, 1457 (5th Cir. 1993). Once the
responsible person becomes aware of a past due tax liability, the taxpayer must use all unencumbered
funds to pay the delinquent taxes. See Huizinga v. United States, 68 F.3d 139, 145 (6th Cir. 1995). 
Funds are considered encumbered only if the taxpayer is legally obligated to use the funds for a
purpose other than the tax liability and the legal obligation is superior to the government's interest
in the funds. See Honey v. United States, 963 F.2d 1083, 1090 (8th Cir. 1992). Second, a
responsible person acts "willfully" if he "recklessly disregards the risk that the taxes may not be
remitted to the government." Logal v. United States, 195 F.3d 229, 232 (5th Cir. 1999). The
"reckless disregard" standard is met when a responsible person "(1) clearly ought to have known that
(2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position
to find out for certain very easily." Wright v. United States, 809 F.2d 425, 427 (7th Cir. 1987). 
While conduct amounting to mere negligence is insufficient to satisfy the willfulness standard under
the federal statute, "gross negligence is enough to establish reckless disregard." Id. Thus, under
federal case law, "willfulness" encompasses not only knowledge, but also reckless disregard, which
can be described as a form of "willful ignorance."

 To determine whether the Texas Legislature modeled section 111.016(b) of the
tax code after section 6672(a) of the Internal Revenue Code, we look at the plain language of the
statutes. See State v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006) ("When construing a statute, we
begin with its language."). The federal statute applies to "an officer or employee of a corporation,
or a member or employee of a partnership, who as such officer, employee, or member is under a duty
to perform the act" covered by the statute. 26 U.S.C. § 6671(b) (2000). The Texas statute applies
to "an officer, manager, director, or employee of a corporation, association, or limited liability
company or a member of a partnership who, as an officer, manager, director, employee, or member,
is under a duty to perform an act" covered by the statute. Tex. Tax Code Ann. § 111.016(d)(1). 
Under the federal statute, liability will attach (1) to a "person required to collect, truthfully account
for, and pay over any tax," (2) if the person "willfully fails to collect such tax, or truthfully account
for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the
payment thereof," (3) resulting in "a penalty equal to the total amount of the tax evaded, or not
collected, or not accounted for and paid over," and (4) such amount is "in addition to other penalties
provided by law." 26 U.S.C. § 6672(a). Under the Texas statute, liability will attach (1) to an
"individual who controls or supervises the collection of tax or money from another person, or . . .
the accounting for and paying over of the tax or money," (2) if the individual "wilfully fails to pay or
cause to be paid the tax or money," (3) resulting in liability in "an amount equal to the tax or money
not paid or caused to be paid," and (4) such amount is "in addition to any other penalty provided by
law." Tex. Tax Code Ann. § 111.016(b). Based on these similarities in the plain language of the
statutes, we agree with the State that the Texas Legislature modeled section 111.016(b) of the
tax code after section 6672(a) of the Internal Revenue Code. We, therefore, presume that the
legislature intended to adopt the federal courts' construction of the term "willfully." See Dallas
Morning News, 22 S.W.3d at 360.

 Indeed, Crawford and Wills concede that section 111.016(b) is, as a general matter,
modeled after the federal statute, and that the term "willfully" in the federal statute encompasses
reckless disregard. However, they argue that the term "wilfully" in section 111.016(b)--unlike the
rest of the subsection--was deliberately not modeled after federal law. Crawford and Wills point
out that the presumption that the Texas Legislature adopted the federal courts' construction of federal
law arises "absent some indication to the contrary." See Chiriboga v. State Farm Mut. Auto. Ins.
Co., 96 S.W.3d 673, 682 (Tex. App.--Austin 2003, no pet.).

 For "some indication" that the legislature intended the meaning of the term "wilfully"
not to be modeled after federal case law, Crawford and Wills rely on changes made to proposed
section 111.016(b) as it was making its way through the legislative process. As originally
introduced, Senate Bill 401 set forth section 111.016(b) as follows:


A person required to collect, truthfully account for, or pay over a tax who fails to
collect, truthfully account for, or pay over the tax, or who knowingly attempts in any
manner to evade or defeat the tax or payment of the tax, is liable for a penalty equal
to the total amount of the tax evaded, not collected, not accounted for, or not paid
over.


Tex. S.B. 401, 74th Leg., R.S. (1995) (introduced version) (emphasis and footnote added). Unlike
the version of the statute ultimately enacted, which uses the term "wilfully," the version of the statute
originally filed as a bill in the senate used the term "knowingly." Crawford and Wills present
two reasons why this change evidences a contrary legislative intent sufficient to rebut the
presumption that the term "wilfully" is to be interpreted consistently with federal case law construing
section 6672(a) of the Code.

 First, Crawford and Wills assert that two key changes were made to proposed
section 111.016(b): (1) the provision's applicability became limited to "tax or other money subject
to the provisions of Subsection (a)"; and (2) "knowingly" was changed to "wilfully." Compare id.,
with Tex. Tax Code Ann. § 111.016(b). As to the former change, subsection (a) specifically governs
sales tax amounts that a person "receives or collects" and, therefore, holds in trust for the State. 
See Tex. Tax Code Ann. § 111.016(a). Thus, this change to proposed section 111.016(b) was a
narrowing of the statute's scope--from any taxes owed, to only those amounts actually received or
collected. Crawford and Wills contend that because the former change was a narrowing of the
statute's scope, the latter change--"knowingly" changed to "wilfully"--must have been intended
as a narrowing of the scope of the statute as well.

 However, Crawford and Wills cite to no authority for their contention that the
narrowing of one aspect of a proposed statute indicates that other changes to the statutory language
in the legislative process must also be intended to have a similar narrowing effect. Without
additional guidance in the statutory text or the legislative history, it is just as likely that the
legislature intended to narrow the statute's scope in one regard by effecting the former change, while
simultaneously broadening the statute's scope in another regard via the latter change. We recognize
that "when the Legislature looks to another jurisdiction's statute, but modifies rather than adopts
some of its provisions, it does so purposefully." Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 497
(Tex. 2001). Here, however, it was an earlier version of the statute that modified the term "wilfully." 
The enacted version did not. This, if anything, is consistent with a legislative intent not to
modify the federal statutory language as to the term "wilfully." See Transportation Ins. Co.
v. Maksyn, 580 S.W.2d 334, 338 (Tex. 1979) ("Courts should be slow to put back that which the
legislature has rejected.").

 Next, Crawford and Wills rely on Texas case law defining the term "willful" in
other contexts. They focus particularly on language in the Texas Supreme Court's opinion in
Luna v. North Star Dodge Sales, Inc., 667 S.W.2d 115 (Tex. 1984). The supreme court in Luna
considered a trial court's award of mental anguish damages in a Deceptive Trade Practices Act
("DTPA") suit. The court of appeals had set aside the award for mental anguish because such
damages were available where there was proof of a "willful tort, willful and wanton disregard, or
gross negligence," but the jury found only that the act was committed "knowingly." See 667 S.W.2d
at 117. The supreme court reversed the court of appeals' judgment because, based on the continuum
of culpable mental states set out in the opinion, knowing conduct was sufficient to satisfy the gross
negligence standard. The court stated, "We are not attempting to equate the terms gross negligence,
'knowingly,' 'willful' and intentional. These terms lie on a continuum with gross negligence being
the lowest mental state and intentional being the highest." Id. at 118. According to Crawford and
Wills, the legislature is presumed to have been aware of this Luna continuum in enacting
section 111.016(b), and the modification of the subsection's language in S.B. 401 from "knowingly"
to "wilfully" indicates, based on Luna, the legislature's selection of a "higher" mental state.

 We note, as an initial matter, that the "continuum" language of the
Texas Supreme Court is likely dicta as to the term "willful," given that the court limited its
holding to a comparison between the terms "gross negligence" and "knowingly." See id. at 117-18. 
We also note that the court did not explicitly announce what positions the terms "knowingly" and
"willful" hold in relation to each other on the continuum. See id. at 118. Regardless, we are not
persuaded that the court's placement of the term "willful" in a continuum is to be applied
unwaveringly beyond Luna's context of mental anguish damages under the DTPA. The term
"willful" in a statute is "a word of many meanings, its construction often being influenced by
its context." Paddock v. Siemoneit, 218 S.W.2d 428 (Tex. 1949) (quoting Spies v. United States,
317 U.S. 492, 497 (1943)); Meisner v. State, 907 S.W.2d 664, 668 (Tex. App.--Waco 1995, no writ)
(quoting Screws v. United States, 325 U.S. 91, 101 (1945)). Courts interpreting the term "willful"
in different statutes have placed the term on several different points along the Luna continuum. (4)

 Thus, contrary to Crawford's and Wills's position, the continuum introduced in Luna
that seems to have placed "willful" between "knowing" and "intentional" has not been universally
applied beyond DTPA claims or the imposition of mental anguish damages. We cannot conclude,
therefore, that the Texas Supreme Court's treatment of willfulness in Luna overcomes the
presumption that the term "wilfully" in section 111.016(b) should be interpreted in accordance with
federal courts' interpretation of section 6672(a) of the Code. Consequently, we conclude that
because the term "willfully" in section 6672(a) has been consistently interpreted to encompass both
knowledge and reckless disregard, the term "wilfully" in section 111.016(b) of the tax code likewise
encompasses both knowledge and reckless disregard.

 Our conclusion finds support in both the object sought to be attained by
section 111.016(b) and the consequences of a construction to the contrary. Tex. Gov't Code Ann.
§ 311.023(1), (5) (West 2005); Helena Chem. Co., 47 S.W.3d at 493 (even when statute not
ambiguous on its face, courts may consider other factors to determine legislative intent). Were we
to construe the term "wilfully" to require only actual knowledge, responsible individuals such as
officers and directors who would potentially be subject to individual liability for a corporate tax
delinquency could evade section 111.016(b) simply by delegating all tax responsibilities to
administrative staff or outside accountants. Federal courts have taken into account consequences
such as this in applying their more expansive interpretation of willfulness in the context of
section 6672. According to the Fifth Circuit, if the term "willfully" required a "higher" mental state,
a corporate official could thwart the statute's purpose "just by compartmentalizing responsibilities
within a business (however small) and adopting a 'hear no evil--see no evil' policy." Wright,
809 F.2d at 427. Crawford's and Wills's interpretation could also impair the government's ability
to operate efficiently and effectively, as "repeated escape from liability would be possible and the
government would be required to monitor corporate affairs daily." Mazo v. United States, 591 F.2d
1151, 1157 (5th Cir. 1979). The Fifth Circuit has also recognized the positive consequences of
interpreting "willfully" to include reckless disregard. "[W]e believe that the rationale for the broad
net of § 6672 responsibility serves a valuable prophylactic purpose: it encourages officers, directors,
and other high-level employees to stay abreast of the company's withholding and payment of
employee's taxes." Barnett, 988 F.2d at 1456-57. According to the senate bill analysis, the purpose
of the amendments to section 111.016 was to "enforce[] timely payment of taxes and fees collected
by the Comptroller more efficiently and effectively than current law allow[ed]." Sen. Comm. on
Finance, Bill Analysis, Tex. S.B. 401, 74th Leg., R.S. (1995). Requiring actual knowledge to
establish section 111.016(b) liability would limit the State's ability to efficiently and effectively
collect delinquent taxes where a company is in financial difficulty and its officers have no interest
in seeing to it that taxes are remitted.

 For purposes of section 111.016(b) of the tax code, we hold that a responsible
individual acts "wilfully" if either he has knowledge that taxes are due to the State and yet uses
unencumbered funds to pay other creditors, or he recklessly disregards the risk that the taxes may
not be remitted to the government. See Logal, 195 F.3d at 232.


Burden of Proof on Willfulness under Section 111.016(b)

 The district court's Conclusion of Law No. 7 states, "Under the facts of this case, the
Comptroller has failed to carry its statutory burden of proof to show that Defendant . . . willfully
failed to pay or cause[] to be paid the tax or money, as required by Tax Code § 111.016(b)." In its
second point on appeal, the State asserts that the trial court's placement of the burden of proof for
the issue of willfulness on the government rather than on the individual defendants was in error.

 The State relies, first, on section 111.013 of the tax code for its assertion. Under
section 111.013, in a suit involving the collection of state tax, a certificate of the Comptroller
showing the tax delinquency is prima facie evidence of: "(1) the stated tax or amount of the tax . . . ;
(2) the stated amount of penalties and interest; (3) the delinquency of the amounts; and (4) the
compliance of the comptroller with the applicable provisions of this code in computing and
determining the amount due." Tex. Tax Code Ann. § 111.013(a) (West 2008). The statute does not,
however, make the certificate prima facie evidence on issues other than those stated. In Parker
v. State, 36 S.W.3d 616 (Tex. App.--Austin 2000, no pet.), for instance, in a suit to collect a
corporation's delinquent taxes under section 111.016 from the corporation's owner and director in
his individual capacity, this court held that the State retained the burden to prove the amount of tax
actually collected by the corporation. See 36 S.W.3d at 617-18. This court declared: "We will not
shift the burden that requires the State to prove taxes actually collected by requiring Parker to rebut
a presumption that all reported taxes were collected." Id. at 619.

 Section 111.016(b) makes a responsible individual liable for non-payment of
collected taxes, but only if the non-payment is willful. See Tex. Tax Code Ann. § 111.016(b). This
court's refusal in Parker to shift the burden to the individual taxpayer on the issue of whether
taxes were collected applies equally to the issue of whether the individual acted willfully. A
tax certificate does not prove the mental state of a responsible individual. When the State litigates,
it occupies the same position as any other litigant, except where specific provision is made to the
contrary. Texas Dep't of Corr. v. Herring, 513 S.W.2d 6, 7-8 (Tex. 1974). Section 111.013 of the
tax code does not except the issue of willfulness in section 111.016(b) from this general rule.

 Next, the State cites to federal case law interpreting section 6672. Under federal case
law, once the government offers an assessment into evidence, the burden of proof is on the taxpayer
as to both his responsible-person status and his willfulness. See Barnett, 988 F.2d at 1453. 
However, the State does not explain why federal case law should apply to section 111.016(b) on the
issue of burden of proof. We are not compelled to apply here the rule of construction we applied to
construe the meaning of the term "wilfully" in section 111.016(b)--when a Texas statute is modeled
after a federal statute, we give weight to the federal courts' construction--because section 111.016
itself contains no language that could be interpreted to allocate the burden of proof on willfulness.

 The placement of the burden of proof on the taxpayer in federal case law stems from
the "uniform rule" in federal tax law that the taxpayer must pay the full amount of a tax assessment
before he can challenge its validity in court. See Psaty v. United States, 442 F.2d 1154, 1158
(3d Cir. 1971); see also Bull v. United States, 295 U.S. 247, 260 (1935) ("Thus the usual procedure
for the recovery of debts is reversed in the field of taxation. Payment precedes defense, and the
burden of proof, normally on the claimant, is shifted to the taxpayer."). An exception to this rule
arose under section 6672 actions in that the taxpayer could pay only a portion of the assessment and
make a claim for a refund, forcing the government to file a counterclaim for the remainder of the
assessment. See Psaty, 442 F.2d at 1159 (citing Steele v. United States, 280 F.2d 89 (8th Cir. 1960)). 
The federal courts placed the burden of proof on the taxpayer with respect to the government's
counterclaim so that there would not be "a substantially greater burden upon a taxpayer who pays
his taxes in full and sues for the refund than upon one who makes a partial payment." Id. at 1160;
see United States v. Lease, 346 F.2d 696, 700 (2d Cir. 1965) ("We can see no reason why the
taxpayer should be in any better position when he . . . waits until the Government has to resort to
enforcing its lien before he attempts to cast doubt upon the underlying tax liability.")

 In contrast, there is no "uniform rule" under Texas law that where the State seeks to
impose individual liability under section 111.016(b), the individual must pay the tax delinquency
and then seek a refund to contest his liability. See Tex. Tax Code Ann. § 111.010 (West 2008)
(attorney general shall bring suit to recover delinquent state taxes). Thus, the original reasoning
behind the federal case law's placement of the burden of proof on taxpayers in a section 6672 action
is inapplicable to a tax code section 111.016 action. We decline to extend the federal burden-shifting
rule to section 111.016 actions. (5) Regardless of whether the State introduces a certificate of the
Comptroller showing the tax delinquency, and thus establishes prima facie evidence on the matters
set forth in section 111.013 of the tax code, we hold that the State retains the burden of proof on the
issue of willfulness under section 111.016(b) of the tax code.


Evidentiary Sufficiency

 In its final two points on appeal, the State challenges the district court's holding that
Crawford's and Wills's failure to pay the collected sales tax on the McCord-Reliant job was not
willful. The State bases its challenges on both legal and factual sufficiency of the evidence. 
Findings of fact in a bench trial are reviewable for legal and factual sufficiency by the same standards
as applied in reviewing a jury's findings. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).

 In reviewing a legal sufficiency challenge, we review the evidence in the light
favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding
contrary evidence unless reasonable jurors could not. City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005). As the State has the burden of proof on the issue of willfulness, we will sustain its
point on appeal based on legal sufficiency only if the evidence conclusively establishes, as a matter
of law, the defendant taxpayers' willfulness. See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241
(Tex. 2001). The test is whether the evidence at trial would enable reasonable and fair-minded
people to reach the verdict under review. Wilson, 168 S.W.3d at 827.

 In reviewing a factual sufficiency challenge, we must consider and weigh all the
evidence in the record, both supporting and against the finding, to decide whether the judgment
should be set aside. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). We will set aside
the judgment for factual insufficiency only if the evidence that supports the finding of lack of
willfulness is so against the great weight and preponderance of the evidence as to be clearly wrong
and unjust. Dow Chem. Co., 46 S.W.3d at 242.


 "Knowledge" prong of willfulness

 Under the "knowledge" prong of willfulness, according to federal case law
interpreting section 6672 of the Internal Revenue Code, willfulness is proven by evidence that the
responsible person had knowledge that taxes were due and yet paid other creditors. See Barnett,
988 F.2d at 1457. Willfulness does not require a bad motive or evil intent, but rather a "voluntary,
conscious, and intentional act." Id.

 In its findings of fact, the district court stated, "During the audit period and
through the time the Company ceased operations in March 2003, neither Mr. Crawford nor Mr. Wills
knew that sales tax had actually been charged to and collected . . . on the McCord-Reliant job." 
(Emphasis added). In its third point on appeal, the State challenges this finding based on legal and
factual sufficiency. Wills testified that he did not know tax was collected on the McCord-Reliant
job until after the Company ceased operations. Crawford testified that he first learned there was a
tax issue on the McCord-Reliant job when the Company's assets were frozen. The State questions
the credibility of the defendants' statements, but presented no evidence directly controverting their
disavowment of actual knowledge. The trial court is the sole judge of witness credibility and the
weight to be given to testimony. Navasota Res., Ltd. v. Heep Petroleum, Inc., 212 S.W.3d 463, 468
(Tex. App.--Austin 2006, no pet.).

 Wallace, testifying for the State, admitted that all his contact regarding the tax audit
was with Wade. The State asserts that Wade's knowledge that tax was "collected and not remitted"
on the McCord-Reliant job was made known to Crawford and Wills, either by an actual
communication or by imputed knowledge. Regarding an actual communication of the information,
Wills testified that he and Crawford had discussions with Wade regarding the audit. However, there
is no evidence that these discussions included the particular issue alleged by the State. Wills testified
that the discussions focused on the other tax matter at issue in the audit, and that Wade never
informed him or Crawford that the Company had actually collected the tax on the McCord-Reliant
job. Crawford's testimony was to the same effect.

 The State contends that even if Wade did not communicate the specifics of the
McCord-Reliant tax delinquency, his knowledge should be imputed to Crawford and Wills under
principles of agency. Wade's power of attorney authorized him to act on behalf of the Company's
interests as a taxpayer. However, assuming that Wade's knowledge can be imputed to the Company
under agency principles, the State provides no authority for the proposition that the Company's
imputed knowledge can, in turn, be imputed to Crawford and Wills as the Company's officers. 
See Restatement (Third) of Agency § 5.03 cmt. g (2006) ("Notice of facts that a principal knows or
has reason to know is not imputed downward to an agent."). It appears the State is conflating the
"responsible person" and "willfulness" elements for liability under section 6672 of the Code. 
Whether an individual is a responsible person may involve agency principles. See Gustin
v. United States, 876 F.2d 485, 491-92 (5th Cir. 1989) ("One does not cease to be a responsible
person merely by delegating that responsibility to others . . . ."). We do not, however, find authority
in section 111.016(b) to hold every responsible individual in a company liable for the willful actions
of a single agent of the company. See Tex. Tax Code Ann. § 111.016(b).

 Next, the State points to the information contained in the Comptroller's
March 7, 2001, sales tax audit, a copy of which was sent to Wills. Wills admitted in his testimony
that because of his receipt of the audit, he and Crawford knew there was a tax delinquency. The
State argues that this conclusively establishes willfulness because the evidence showed vendors and
employees were paid with Company funds after that date. Crawford and Wills argue in response that
while the audit showed a tax delinquency, neither knew that the tax had actually been collected. In
fact, Wallace admitted in his testimony that nothing in the audit communicated that tax on the
McCord-Reliant job had been collected but not remitted. The audit report had a "zero" on its
"Tax Collected not Remitted" line. Thus, there was sufficient evidence to support a finding that
Crawford and Wills never obtained actual knowledge that tax had been collected until the Company
went out of business. (6)

 In addition to the evidence being sufficient to support the district court's finding that
Crawford and Wills had no knowledge that the tax was actually collected, there was sufficient
evidence that Crawford and Wills did not have knowledge that the tax delinquency on the
McCord-Reliant job had become due. (7) Following receipt of the audit results in March 2001, the
Company, through its agent Wade, disputed its obligation to pay the tax delinquency and sought
resolution through the Comptroller's administrative hearings process. Consequently, the tax amount
did not become "due and payable" until after the Comptroller's decision in the redetermination
hearing became final. See Tex. Tax Code Ann. § 111.0081(c) (West 2008). Knowledge of the
March 7, 2001, audit report, therefore, was insufficient to conclusively establish that Crawford or
Wills "wilfully fail[ed] to pay or cause to be paid the tax," because the tax amount had not yet
become due. See Logal, 195 F.3d at 232.

 In accordance with the Comptroller's order, the tax became "due and payable" within
20 days after November 15, 2002. However, the Comptroller's notice was sent to the wrong
address. (8) The earliest date on which any evidence shows either Crawford or Wills had actual
knowledge of a final determination of tax due on the McCord-Reliant job is January 15, 2003, when
apparently Wills received a faxed letter from the Comptroller. (9) Once a responsible individual
becomes aware of a past due tax liability, he is considered to act willfully if "he fails to use all
unencumbered funds that come into his possession thereafter to pay the delinquent taxes." Huizinga,
68 F.3d at 145. Although the State argues that the Company had the "means" to pay the tax, the
State presented no evidence that, during the time period subsequent to January 15, 2003, the
Company paid unencumbered funds to creditors other than the State.

 The evidence is sufficient to support the district court's finding that Crawford
and Wills did not have the requisite knowledge to satisfy the "wilfully" requirement of
section 111.016(b). The evidence at trial would enable reasonable and fair-minded people to reach
the district court's conclusion, and the evidence that supports the district court's finding of lack of
knowledge is not so against the great weight and preponderance of the evidence as to be clearly
wrong and unjust.


 "Reckless disregard" prong of willfulness

 Willfulness can also be proven if the responsible individual acted with
reckless disregard of a known or obvious risk that tax would not be paid over to the government. 
Morgan, 937 F.2d at 285-86. Reckless disregard includes failure to investigate or correct
mismanagement after being notified that taxes have not been paid. Id. at 286. Mere negligence does
not establish willfulness. Id.

 Although the district court incorrectly concluded that willfulness under
section 111.016(b) does not encompass reckless disregard, the court made a finding of no reckless
disregard in its Conclusion of Law No. 3: "Mr. Crawford and Mr. Wills did not act recklessly in
relying on Ms. Delgado and Mr. Wade with regard to the sales tax responsibilities of the Company." 
In its fourth point on appeal, the State challenges the legal and factual sufficiency of the
district court's finding of a lack of reckless disregard. Regarding Delgado, the bookkeeper who
made the error that resulted in the tax nonpayment, Wills testified that she routinely allocated sales
as taxable or nontaxable during the four years she had been at the Company, and that she had
fifteen years of experience in construction accounting prior to her employment with the Company. 
She had been with the Company during the previous audit, during which period the Company paid
over four million dollars in sales tax to the Comptroller, and the audit showed an error rate of
only one-half of one percent. As for Crawford's and Wills's reliance on Wade, Wills testified
that in addition to handling an IRS audit "100 percent clean," Wade properly handled the
"federal tax returns and the franchise tax returns and the information returns." The State, in
response, presented no evidence that prior to its freezing the Company's bank account, Crawford or
Wills had reason to suspect that reliance on Delgado or Wade would be reckless.

 The State argues that Crawford and Wills acted recklessly by not doing their own
research into the tax delinquency upon obtaining knowledge of the 2001 audit. The cases the State
cites, to support its argument, that conclude the responsible person under section 6672 of the Code
acted willfully under the "reckless disregard" prong are distinguishable. (10) In Mazo, the responsible
individuals contended that they relied on a company employee who misled them by asserting that
he would "take care" of the tax delinquencies, even though that employee had been originally
responsible for the tax delinquencies in the first place. See Mazo, 591 F.2d at 1155, 1157. The
court in Wright based its finding of recklessness on the company's small size, its history of
noncompliance, the continued participation of the employee who had been responsible for the
earlier violation of the company's tax responsibilities, and the "continued parlous state" of the
company's finances. See Wright, 809 F.2d at 428. The court in United States v. Vespe, 868 F.2d
1328 (3d Cir. 1989), found reckless disregard as to a tax quarter because the responsible individual
knew that taxes had not been paid for the four quarters immediately following. See 868 F.2d
at 1335. In Denbo v. United States, 988 F.2d 1029 (10th Cir. 1993), the responsible individual knew
that the corporation was financially unsound and that there had been tax delinquencies, and relied
on the president's claim that "they had everything worked out" even though he knew the
president's prior representations regarding tax payments had turned out to be false. See 988 F.2d at
1031, 1033-34. Unlike the cited cases, in this case there was no evidence that (1) prior to the
Comptroller's freezing of the bank accounts, the Company's finances were troubled, (2) Wade,
whom Crawford and Wills relied on to resolve the Company's tax delinquency, had any known
history of being irresponsible as to such a tax matter, or (3) the Company had any significant history
of sales tax noncompliance.

 To satisfy the reckless disregard prong, there must be a "known or obvious risk" that
tax is owed but not paid. See Morgan, 937 F.2d at 285-86. As noted previously, the evidence was
sufficient to establish that Crawford and Wills did not know tax was actually collected on the
McCord-Reliant job. Also, as noted previously, according to the evidence, Crawford and Wills did
not know of the tax becoming due and payable until the Company's bank accounts were frozen. 
Vernon Wallace, a senior auditor of the Comptroller, admitted to no personal knowledge that
Crawford or Wills received any communication of the audit results. The only basis identified by
Jeremy Davies, accounts examiner for the Comptroller, for the determination that Crawford and
Wills had knowledge of taxes being collected and due was their having signed sales tax returns
during the months at issue. According to Wills, the freezing of the Company's accounts was the first
notice that the tax determination was final. Crawford testified that he was "surprised, shocked and
panicked" by the State's action in freezing the Company's accounts and did not get an answer from
Wade as to his lack of communication regarding the Comptroller's final determination.

 The evidence is sufficient to establish that Crawford and Wills did not have the
requisite reckless disregard to satisfy the "wilfully" requirement of section 111.016(b). The evidence
at trial would enable reasonable and fair-minded people to reach the district court's conclusion, and
the evidence that supports the district court's finding of lack of recklessness is not so against the
great weight and preponderance of the evidence as to be clearly wrong and unjust.


Conclusion

 We conclude that willfulness under section 111.016(b) of the tax code encompasses
both actual knowledge and reckless disregard, and we, therefore, vacate the district court's
Conclusions of Law No. 5 and No. 6. We also conclude that the State bears the burden to establish
a responsible individual's willfulness under section 111.016(b). Finally, we conclude that the
evidence was legally and factually sufficient to establish that Crawford and Wills did not willfully
fail to pay or cause to be paid the delinquent tax on the McCord-Reliant job. We affirm the
judgment of the district court.



 __________________________________________

 G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: August 21, 2008
1. There is some confusion in the record as to when Crawford and Wills discovered that the
Company's accounts were frozen. Crawford testified that he and Wills discovered that the accounts
were frozen on February 3, 2003. According to the trial court's findings of fact, Crawford and Wills
learned the Company's accounts were frozen in mid-January. The State has not challenged the trial
court's findings of fact regarding this issue on appeal, and argues based on the discovery occurring
in mid-January.
2. The term "person" is generally defined to cover business entities. See Tex. Tax Code Ann.
§ 101.002(a) (West 2008); Tex. Gov't Code Ann. § 311.005(2) (West 2005).
3. "The district courts of Travis County have exclusive, original jurisdiction of a suit arising
under this section." Tex. Tax Code Ann. § 111.016(c) (West 2008).
4. See, e.g., In the Matter of Humphreys, 880 S.W.2d 402, 407 (Tex. 1994) (in the context
of federal statute regarding tax evasion, finding that "willfulness . . . means voluntary intentional
violation of a known duty"); Woodhouse v. Rio Grande R.R. Co., 3 S.W. 323, 324 (Tex. 1887)
("The word 'willfully' carries the idea, when used in connection with an act forbidden by law, that
the act must be done knowingly or intentionally . . . ."); Morrone v. Prestonwood Christian Acad.,
215 S.W.3d 575, 582 (Tex. App.--Eastland 2007, pet. denied) (for purposes of liability protection
for teachers, comparing "willful misconduct" to "heedless and reckless disregard" and "gross
negligence"); Brown v. State, 183 S.W.3d 728, 733 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd)
("A person commits the offense of reckless driving by driving a vehicle in willful or wanton
disregard for the safety of persons or property."); In re Thoma, 873 S.W.2d 477, 489 (Tex. Rev. Trib.
1994, no appeal) (for constitutional provision regarding discipline of judges, construing "willful"
to refer to "a judge acting intentionally, or with gross indifference to his conduct"); Wheeler v. Yettie
Kersting Mem'l Hosp., 866 S.W.2d 32, 50 n.25 (Tex. App.--Houston [1st Dist.] 1993, no writ)
(considering the terms "heedless and reckless disregard," "willful act or omission," "willful and
wanton disregard," and "gross negligence" to be synonymous in the context of Good Samaritan
statute); Louisiana Pac. Corp. v. Smith, 553 S.W.2d 771, 775 (Tex. Civ. App.--Tyler 1977, no writ)
("There is no difference in legal consequences between a willful disregard of the rights of another
and a reckless disregard of same.") (quoting Emporia Lumber Co. v. League, 105 S.W. 1167, 1168
(Tex. Civ. App.--San Antonio 1907, no writ)).
5. According to the Third Circuit, the public policy behind the taxpayer bearing the burden
of proof--on the issue of willfulness specifically--is that "the presumption appropriately requires
that corporate officers explain their failure to perform duties imposed upon them by law." Psaty
v. United States, 442 F.2d 1154, 1160 (3d Cir. 1971). Such a policy would seem to relieve the
State of its burden of proof in any enforcement action where liability depends on the defendant's
mental state, and we decline to apply it here.
6. The State also points to two admissions by Wills to argue that he knew the tax was
collected. Wills admitted in his deposition to being aware the audit showed "there was tax not
remitted to the State for the McCord project." However, this admission did not demonstrate
knowledge that the tax was collected. Also, Wills admitted at trial that the $158,912.27 amount was
included on invoices and monthly sales tax reports and was deposited into the Company's operating
account. However, Wills did not admit to his having knowledge of these facts prior to the State's
filing of the lawsuit below.
7. It is not clear from the plain language of section 111.016 that knowledge that tax was
collected constitutes willfulness, or that a lack of such knowledge proves a lack of willfulness. 
See Tex. Tax Code Ann. § 111.016(a), (b). However, the State has not challenged on appeal the
district court's conclusion that the defendants' lack of willfulness regarding whether the tax had been
collected was sufficient to refute their willfulness under section 111.016(b), and, because we find
the evidence sufficient to show that Crawford and Wills had no knowledge (and did not recklessly
disregard) that the tax was due, we decline to reach the issue.
8. The State does not dispute this fact.
9. Crawford testified that the hold on the Company's accounts occurred on February 3, 2003,
which, he alleges, is the first time he received any notification that tax on the McCord-Reliant job
was due. Although there is no evidence in the record before us of another date on which the hold
may have occurred, the district court found that it occurred in mid-January 2003. The court may
have based its finding on (1) Wills's testimony that until he "got the letter of freeze on the accounts,"
he had not heard or seen anything to notify him that the Comptroller's determination was final, and
(2) Wills's letter to the Comptroller, dated January 22, 2003, that proposes a payment plan
"in response to my conversations with Kim Bridges of your office and following guidelines
described to me in her faxed letter of 1/15/03." We need not consider Crawford's testimony of a
February 3 hold because the State has not challenged the district court's findings on this issue on
appeal. Even if we were to determine that Wills learned of the tax due on January 15 and yet the
hold did not occur until February 3, we would still find the evidence sufficient to show Wills's lack
of willfulness under section 111.016(b) because the State presented no evidence that, during the time
period subsequent to January 15, 2003, the Company paid unencumbered funds to creditors other
than the State.
10. We note that federal case law may not always be ideal authority on the issue of willfulness,
since under section 6672 of the Internal Revenue Code the taxpayer bears the burden to establish
lack of willfulness, and, as we concluded above, for purposes of section 111.016(b) the State has the
burden of proof on willfulness.