Richard D. PARKER, Appellant,

v.

The STATE of Texas; The City of Houston; and Transit Authority of Houston, Appellees.

No. 03–00–00281–CV.

Court of Appeals of Texas, Austin.

Dec. 7, 2000.

Appeal Dismissed and Judgment Withdrawn
Jan. 11, 2001.

David M. Gunn, Hogan Dubose & Townsend, L.L.P., Houston, for appellant.

David Randell, Asst. Atty. Gen., Austin, for appellees.

Before Justices JONES*, KIDD and YEAKEL.

J. WOODFIN JONES, Justice (Assigned).

Appellant Richard D. Parker appeals from a judgment awarding the State of Texas, the City of Houston, and the Transit Authority of Houston (collectively "the State"), appellees, past-due taxes owed by Century Architectural Hardware Corporation ("Century"). The State sued Parker, seeking to recover from him individually Century's delinquent taxes. Following a bench trial, the district court found in favor of the State. Parker was ordered to pay $89,711.13 to the State, $10,923.09 to the City, and $10,923.09 to the Transit Authority. We will reverse the trial court's judgment and render judgment that the appellees take nothing in their suit against Parker.

Parker was the sole owner and director of Century, a closely held corporation. Parker signed Century's application for a sales tax permit as an authorized representative; he also signed Century's 1992 and 1993 franchise tax reports and several checks written on Century's account for tax payments. Century filed for Chapter 11 bankruptcy in April 1993, and ceased operations altogether in December 1993 or January 1994. The State sued Parker as an individual for taxes owed by Century for December 1992, January through March 1993, and December 1993. Evidence showed that Century made sales generating $11,863.59 in tax liability in December 1992, $6,841.62 in January 1993, $8,462.93 in February 1993, $8,910.12 in March 1993, and $483.39 in December 1993. A certificate issued by the State Comptroller was admitted without objection ("the comptroller's certificate"). The comptroller's certificate names Parker as the taxpayer and states that on August 18, 1999, Parker owed a total of $84,341.08 to the appellees; the certificate does not reference Century.

## Discussion

■ In his first issue on appeal, Parker argues that the State failed to prove the amount of taxes collected. He agrees that the comptroller's certificate established the amount of taxes not paid to the State by Century, but he argues the certificate does not prove how much tax money was actually collected because Century used an accrual method of reporting taxes.[1] The State contends that because the certificate names Parker as the taxpayer, the record contains prima facie evidence of his tax

---

* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. Steve Chamberlin, an accounts examiner for the comptroller's office, explained the accrual method of sales tax accounting as follows: a sale is considered to have been made when an invoice is issued, and sales taxes are due during the filing period covering the date of the sale even if the invoice is not paid by the customer during that filing period. In other words, if a sale is made on May 1, meaning an invoice is issued and the customer receives merchandise on May 1, the sales tax is due on June 20, the due date for sales taxes owed during the filing period covering May 1, even if the customer does not pay the invoice until July 1. Sales taxes are due whether or not the actual taxes have been collected by the company.

liability. We agree with Parker that the State failed to produce more than a scintilla of evidence showing how much tax money was actually collected, as required by the Tax Code.

■ The State sought to recover from Parker under section 111.016 of the Tax Code, which provides that "[a]ny person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state and is liable to the state for the full amount collected. . . ." Tex.Tax Code Ann. § 111.016(a) (West Supp.2000). A comptroller's certificate, when admitted into evidence, is prima facie evidence that, if unrebutted, establishes as a matter of law the stated amount of delinquent taxes owed. Tex.Tax Code Ann. § 111.013(a) (West 1992); *N.S. Sportswear, Inc. v. State*, 819 S.W.2d 230, 232 (Tex.App.—Austin 1991, no writ). Reading the two statutes together, however, the State still "must prove the *actual amount he received or collected, and his liability is limited to the 'amount collected.'*" *N.S. Sportswear*, 819 S.W.2d at 233 (quoting § 111.016).

Thus, assuming without deciding that Parker is individually liable under section 111.016, the State still has the burden of proving the actual amount of taxes Parker collected. *Id.* The comptroller's certificate alone simply establishes that $84,341.08 in taxes was never paid to the State; it does not establish how much, if any, of that tax money Parker (or even Century) actually collected.

The State argues that additional evidence establishes Parker's liability. The State points to Century's tax returns, which established Century's tax obligation based on sales made during applicable filing periods.[2] The State also argues that it

proved taxes were collected through evidence indicating that Century collected about eighty-six percent of its receivables within sixty days and that Century had about $33,000 on hand at the time it went out of business.

Parker testified that at the time Century incurred the tax liability, he was Century's sole owner and majority shareholder. Parker said Century's usual practice was to extend credit to its customers, who were principally contractors. He testified that Century's receivables "probably averaged 60 days or more" in collection time. He agreed that the normal practice was to pay "the taxes out of other monies prior to collecting the receivables which included the tax."

Parker testified on cross-examination as follows:

Question: Mr. Parker, what percentage of your sales did you say were on the 60– to 90–day turn around?

Answer: Well, it was average. Some of them would be past 90 days, some might be a little less than 60. The timing . . . was quite variable. Contractors had deadlines in which they had to file paperwork with the bank or their customer, and if they missed their time, you had another full 30 days to even let them file for the money. So it was variable. It would probably never be less than 45 days, that would be considered a good turnaround. But generally speaking, around 60. The average turnaround would be around 60 days.

Question: For all of your sales?

Answer: Yes, ma'am.

Question: If you were to average them all, it's a 60–day turnaround?

Answer: Pretty much.

---

**2.** At trial, Chamberlin was asked, "Can you state for the Court the amount of sales taxes that were collected [in December 1992]?" Chamberlin answered, "It's $11,863.59." However, the question misstates the evidence. The exhibit to which the question and answer referred, Century's tax return for December 1992, indicates taxable sales were $143,801, resulting in $11,863.59 in taxes owed. It does not indicate how much of that money Century actually collected.

Parker also testified that when Century went out of business, there was about $33,000 in Century's account, but the bankruptcy court would not let him write any checks on the account. The State introduced evidence that in January and March 1993 Parker wrote three checks on Century's account to pay its sales taxes; those checks did not clear Century's bank and were returned for insufficient funds. The attorney who represented Century in its bankruptcy proceedings testified that during the bankruptcy proceedings there were significant restrictions on what checks could be written on Century's accounts because of competing creditor claims; he believed some checks written before the bankruptcy filing were returned for insufficient funds because the bankruptcy court closed the account. He also said that Century had $235,671 in outstanding accounts receivable when it filed for bankruptcy and that the $235,671 included uncollected sales taxes.

While the evidence to which the State points may indicate that *some* tax money was collected, it does not answer the question of *how much* money was actually collected. Evidence of average collection percentages does not establish actual collections. Further, the record contains indications that the State knew some of the tax money may not have been collected. When asked, "You didn't do any investigation to determine whether the [tax] funds were ever collected and not paid over [to the State]," Chamberlin answered only that he had checked to see whether Century had filed regular returns for the periods in question. He also said he was unaware that Century was in bankruptcy in 1993. A bankruptcy attorney with the Texas Attorney General's Office who reviewed the comptroller's claim against Century testified that the bankruptcy record indicated $235,671 was outstanding as accounts receivable at the time Century filed for bankruptcy. He said those outstanding accounts receivable included some taxes owed to the State but not collected by Century.

Finally, the State argues that Parker never denied collecting the owed tax money and that Parker was in a position to produce proof that the money was not collected. We will not shift the burden that requires the State to prove taxes actually collected by requiring Parker to rebut a presumption that all reported taxes were collected. *N.S. Sportswear,* 819 S.W.2d at 233.

We hold that the record does not contain more than a scintilla of evidence of how much tax money was actually collected by Parker. Therefore, the record does not support rendition of a judgment against Parker under section 111.016(a) of the Tax Code. Due to our resolution of Parker's first issue on appeal, it is unnecessary to reach his other two issues. We reverse the district court's judgment and render judgment that the appellees take nothing in their suit against Parker.