# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00622-CV

**The State of Texas; the City of Houston, Texas, and
the Transit Authority of Houston, Texas, Appellants**

**v.**

**Steve Crawford, a/k/a Steven Lynn Crawford, and
Robert Wills, a/k/a Robert William Wills, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. D-V-GV-04-000065, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## O P I N I O N

Appellants the State of Texas; the City of Houston, Texas; and the Transit Authority of Houston, Texas (collectively, the "State") sued appellees Steve Crawford and Robert Wills, as responsible individuals, for the sales tax liability of S. L. Crawford Construction, Inc. Seeking to establish appellees' individual liability under section 111.016(b) of the Texas Tax Code, the State asserted that Crawford and Wills willfully failed to pay or cause to be paid the delinquent sales tax amounts. Following a bench trial, the district court concluded that Crawford and Wills did not act willfully, and the court entered judgment that the State take nothing by its suit. The State appeals, asserting that: (1) the district court erred in construing the willfulness requirement of section 111.016(b) to encompass knowledge, but not reckless disregard of the risk that taxes were not remitted, (2) the defendant taxpayers should have had the burden of proof on the issue of

willfulness, and (3) the evidence was legally and factually insufficient to support the district court's judgment on the issue of willfulness. We conclude that the district court properly placed the burden of proof on the State to establish willfulness. As to the State's first point on appeal, we agree that the term "wilfully" in section 111.016(b) encompasses both knowledge and reckless disregard. However, because we find the evidence sufficient to establish that the defendants did not act with knowledge or reckless disregard, we affirm the judgment of the district court.

***Factual and Procedural Background***

S. L. Crawford Construction, Inc. (the "Company") was engaged in the construction business in the Houston area, specializing in the interior finish-out of commercial properties. Appellees Crawford and Wills were officers of the Company during the events at issue in this suit. Crawford formed the Company in 1982, and was its president until 2001 when he became the chief executive officer. He had ultimate decision-making authority on all Company matters. Wills joined the Company in 1996, and was its chief financial officer until 2001 when he became the president. He reported solely to Crawford. Crawford and Wills made all financial decisions, had check-writing authority, signed the Company's sales tax returns, and had the authority to hire and fire employees.

In November 2000, the Texas Comptroller of Public Accounts commenced a sales tax audit of the Company for the period of October 1, 1997, through September 30, 2000. By mid-January 2001, the Comptroller had narrowed its inquiry to two construction jobs, only one of which—the "McCord-Reliant job"—is at issue in this suit.

In its regular course of business, the Company performed jobs that were subject to sales tax and jobs that were not subject to sales tax. Similarly, some of the work performed for the

2

client on the McCord-Reliant job was taxable, and some was non-taxable. The job at issue was taxable, and the Company collected sales tax from the client in the amount of $158,912.27. However, the Company's bookkeeper, Linda Delgado, incorrectly marked the job as non-taxable in the Company's monthly sales tax worksheets. As a result of this error, the Company's sales tax returns and payments to the Comptroller for the months that included the McCord-Reliant job did not include the sales tax collected on the McCord-Reliant job. Thus, the sales tax was collected by the Company but not remitted to the State.

Vernon Wallace, a senior auditor for the Comptroller, conducted the sales tax audit. When the audit began, Wills executed a limited power of attorney authorizing John P. Wade, an outside certified public accountant, to act on behalf of the Company with regard to sales tax matters during the audit period. According to Wills, he "turned everything over" to Wade. During the course of the audit, Wallace dealt only with Wade in obtaining documentation and an explanation of the Company's sales tax collections and payments.

By letter dated March 7, 2001, Wallace informed Wade that the audit was complete and attached documents showing an unpaid tax amount on the McCord-Reliant job of $179,743.17. Wills was copied on the letter. By letter dated April 2, 2001, Wade formally requested a redetermination hearing on the audit results. Wade did not contest that the McCord-Reliant job was taxable or that the Company had not paid sales tax on the job. Instead, Wade stated the Company's intention "to submit documentation that would show the sales tax applicable to this job was timely paid by [the Company] with a credit from previous periods." In response, as part of the Comptroller's administrative hearings process, the Comptroller informed Wade that he had

3

sixty days in which to submit documentation to support the Company's claim regarding preexisting credits. Wade did not provide any supporting documentation during the sixty-day period or at any other time. On September 28, 2001, the Comptroller issued a Position Letter regarding the audit, rejecting Wade's arguments on the McCord-Reliant job because the Company "has presented nothing to identify and to have properly determined any overpayment [or] any period in which the overpayment allegedly occurred." Prior to any hearing before the administrative law judge taking place, Wade announced, by letter dated October 16, 2002, that the Company was withdrawing its petition for redetermination and requested that the hearing be dismissed. By the Comptroller's order, the dismissal became final on November 15, 2002, and the tax, penalty, and interest amounts were "due and payable within twenty (20) days thereafter."

The Comptroller sent the Company notice of its order, but sent the notice to the wrong address. The Company had changed addresses at some point in 2001 or earlier in 2002. According to Crawford and Wills, they did not become aware of the final determination (or Wade's request for dismissal) until they discovered that the Comptroller had frozen the Company's bank accounts.[1] On that date, they went in person to the Comptroller's Houston branch office and proposed an initial payment of $70,000 and the remainder to be paid within "the next few months." On February 11, the Comptroller obtained $70,000 from the

---

[1] There is some confusion in the record as to when Crawford and Wills discovered that the Company's accounts were frozen. Crawford testified that he and Wills discovered that the accounts were frozen on February 3, 2003. According to the trial court's findings of fact, Crawford and Wills learned the Company's accounts were frozen in mid-January. The State has not challenged the trial court's findings of fact regarding this issue on appeal, and argues based on the discovery occurring in mid-January.

4

Company's bank account. Before the end of that month, due to the hold on the Company's accounts and its impact on the Company's payment capabilities, lines of credit, and customer perception, the Company went out of business.

On June 2, 2003, the Comptroller issued a jeopardy determination against Crawford and Wills in their individual capacities for $179,743.17, plus penalties and interest. According to Jeremy Davies, an accounts examiner for the Comptroller, the determination to impose individual liability was based on records showing that during the time period at issue both Crawford and Wills were officers of the Company, signed the sales tax returns, and had the authority to sign Company checks. The tax liability was subsequently amended to $158,912.27—the amount actually collected by the Company—and then reduced by a portion of the $70,000 already paid.

The State filed suit against Crawford and Wills in district court on January 23, 2004, and the case was tried without a jury on September 10 and 11, 2007. At trial, under the authority of section 111.016 of the Texas Tax Code, the State sought $95,817.75 in unpaid sales tax, plus $25,473.01 in penalties and $62,726.29 in interest. Crawford and Wills conceded at trial that they were "responsible individuals" with the requisite control over the sales tax payments. *See* Tex. Tax Code Ann. § 111.016(d)(1) (West 2008) (defining "responsible individual"). Appellees also stipulated at trial to the amounts alleged due and that the Company had collected the sales tax at issue. *See id.* § 111.016(a) (liability applies as to "the full amount collected plus any accrued penalties and interest"). The only issue was whether Crawford and Wills "wilfully" failed to pay or cause to be paid the sales tax from the McCord-Reliant job. *See id.* § 111.016(b).

5

The district court entered judgment on October 2, 2007, that the State take nothing by its suit. In its conclusions of law, the district court ruled that the term "wilfully" requires a higher mental state than reckless disregard and that the State has the burden of proof on the issue of willfulness. The State presents four points on appeal: (1) the willfulness requirement of tax code section 111.016(b) should be construed in accordance with federal law so as to encompass both knowledge and reckless disregard, (2) defendant taxpayers should bear the burden of proof to establish their lack of willfulness, (3) the trial court's finding that Crawford and Wills had no actual knowledge of their failure to pay collected taxes is not supported by legally or factually sufficient evidence, and (4) the trial court's finding that Crawford and Wills did not recklessly disregard the risk that collected taxes would not be paid is not supported by legally or factually sufficient evidence.

***Applicable Law***

Under section 111.016(a) of the tax code, the Company was obligated to remit to the State sales tax collected from its clients on taxable jobs. In addition, the Company held the collected sales tax "in trust" for the State until the taxes were remitted to the State:

> (a) Any person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state and is liable to the state for the full amount collected plus any accrued penalties and interest on the amount collected.

*Id.* § 111.016(a).[2]  The State, in this suit, attempts to recover the Company's sales tax delinquency from Crawford and Wills in their individual capacities, as "responsible individuals" of the Company. Under section 111.016(b) of the tax code, a responsible individual can be held liable for a company's collected, but unremitted, sales tax if he "wilfully" fails to pay the tax:

> (b)  With respect to tax or other money subject to the provisions of Subsection (a), an individual who controls or supervises the collection of tax or money from another person, or an individual who controls or supervises the accounting for and paying over of the tax or money, and who wilfully fails to pay or cause to be paid the tax or money is liable as a responsible individual for an amount equal to the tax or money not paid or caused to be paid.

*Id.* § 111.016(b).

### *Definition of Willfulness under Section 111.016(b)*

The State contends that the district court misconstrued the term "wilfully" in section 111.016(b).  In its Conclusions of Law No. 5 and No. 6, the district court held that if the defendants did not have "actual knowledge," the statute's willfulness standard was not met.  In its first point on appeal, the State asserts that the term "wilfully" encompasses both actual knowledge *and* a responsible individual's reckless disregard of the risk that taxes may not be remitted to the government.

Section 111.016(b) was enacted by the legislature in 1995, imposing liability on individuals for a company's unpaid state taxes.  *See* Act of May 3, 1995, 74th Leg., R.S., ch. 87,

---

[2]  The term "person" is generally defined to cover business entities.  *See* Tex. Tax Code Ann. § 101.002(a) (West 2008); Tex. Gov't Code Ann. § 311.005(2) (West 2005).

§ 1, 1995 Tex. Gen. Laws 872, 872. This court has not yet addressed the meaning of the term "wilfully" in this statute.[3] The State's position that willfulness under section 111.016(b) includes both actual knowledge and reckless disregard is based on the assertion that federal tax law defines willfulness in that manner and the legislature modeled section 111.016(b) after the federal tax law. When a Texas statute is modeled after a federal statute, we presume that the legislature intended to adopt the federal courts' construction of the federal statute. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 360 (Tex. 2000).

Section 6672 of the Internal Revenue Code (the "Code") imposes individual liability on a person who is required to collect, truthfully account for, or pay a tax but who "willfully fails" to do so. *See* 26 U.S.C. § 6672(a) (2000). According to federal case law, willfulness under section 6672(a) requires "a voluntary, conscious, and intentional act, but not a bad motive or evil intent." *Morgan v. United States*, 937 F.2d 281, 285 (5th Cir. 1991). Willfulness under the federal statute may be proven in either of two ways. First, willfulness is normally established by evidence that the responsible person had knowledge that taxes were due to the United States and yet paid other creditors. *See Barnett v. Internal Revenue Serv.*, 988 F.2d 1449, 1457 (5th Cir. 1993). Once the responsible person becomes aware of a past due tax liability, the taxpayer must use all unencumbered funds to pay the delinquent taxes. *See Huizinga v. United States*, 68 F.3d 139, 145 (6th Cir. 1995). Funds are considered encumbered only if the taxpayer is legally obligated to use the funds for a purpose other than the tax liability and the legal obligation is superior to the government's interest

---

[3] "The district courts of Travis County have exclusive, original jurisdiction of a suit arising under this section." Tex. Tax Code Ann. § 111.016(c) (West 2008).

8

in the funds. *See Honey v. United States*, 963 F.2d 1083, 1090 (8th Cir. 1992). Second, a responsible person acts "willfully" if he "recklessly disregards the risk that the taxes may not be remitted to the government." *Logal v. United States*, 195 F.3d 229, 232 (5th Cir. 1999). The "reckless disregard" standard is met when a responsible person "(1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily." *Wright v. United States*, 809 F.2d 425, 427 (7th Cir. 1987). While conduct amounting to mere negligence is insufficient to satisfy the willfulness standard under the federal statute, "gross negligence is enough to establish reckless disregard." *Id.* Thus, under federal case law, "willfulness" encompasses not only knowledge, but also reckless disregard, which can be described as a form of "willful ignorance."

To determine whether the Texas Legislature modeled section 111.016(b) of the tax code after section 6672(a) of the Internal Revenue Code, we look at the plain language of the statutes. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("When construing a statute, we begin with its language."). The federal statute applies to "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act" covered by the statute. 26 U.S.C. § 6671(b) (2000). The Texas statute applies to "an officer, manager, director, or employee of a corporation, association, or limited liability company or a member of a partnership who, as an officer, manager, director, employee, or member, is under a duty to perform an act" covered by the statute. Tex. Tax Code Ann. § 111.016(d)(1). Under the federal statute, liability will attach (1) to a "person required to collect, truthfully account for, and pay over any tax," (2) if the person "willfully fails to collect such tax, or truthfully account

9

for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof," (3) resulting in "a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over," and (4) such amount is "in addition to other penalties provided by law." 26 U.S.C. § 6672(a). Under the Texas statute, liability will attach (1) to an "individual who controls or supervises the collection of tax or money from another person, or . . . the accounting for and paying over of the tax or money," (2) if the individual "wilfully fails to pay or cause to be paid the tax or money," (3) resulting in liability in "an amount equal to the tax or money not paid or caused to be paid," and (4) such amount is "in addition to any other penalty provided by law." Tex. Tax Code Ann. § 111.016(b). Based on these similarities in the plain language of the statutes, we agree with the State that the Texas Legislature modeled section 111.016(b) of the tax code after section 6672(a) of the Internal Revenue Code. We, therefore, presume that the legislature intended to adopt the federal courts' construction of the term "willfully." *See Dallas Morning News*, 22 S.W.3d at 360.

Indeed, Crawford and Wills concede that section 111.016(b) is, as a general matter, modeled after the federal statute, and that the term "willfully" in the federal statute encompasses reckless disregard. However, they argue that the term "wilfully" in section 111.016(b)—unlike the rest of the subsection—was deliberately *not* modeled after federal law. Crawford and Wills point out that the presumption that the Texas Legislature adopted the federal courts' construction of federal law arises "absent some indication to the contrary." *See Chiriboga v. State Farm Mut. Auto. Ins. Co.*, 96 S.W.3d 673, 682 (Tex. App.—Austin 2003, no pet.).

10

For "some indication" that the legislature intended the meaning of the term "wilfully" not to be modeled after federal case law, Crawford and Wills rely on changes made to proposed section 111.016(b) as it was making its way through the legislative process. As originally introduced, Senate Bill 401 set forth section 111.016(b) as follows:

> A person required to collect, truthfully account for, or pay over a tax who fails to collect, truthfully account for, or pay over the tax, or who *knowingly* attempts in any manner to evade or defeat the tax or payment of the tax, is liable for a penalty equal to the total amount of the tax evaded, not collected, not accounted for, or not paid over.

Tex. S.B. 401, 74th Leg., R.S. (1995) (introduced version) (emphasis and footnote added). Unlike the version of the statute ultimately enacted, which uses the term "wilfully," the version of the statute originally filed as a bill in the senate used the term "knowingly." Crawford and Wills present two reasons why this change evidences a contrary legislative intent sufficient to rebut the presumption that the term "wilfully" is to be interpreted consistently with federal case law construing section 6672(a) of the Code.

First, Crawford and Wills assert that *two* key changes were made to proposed section 111.016(b): (1) the provision's applicability became limited to "tax or other money subject to the provisions of Subsection (a)"; and (2) "knowingly" was changed to "wilfully." *Compare id.*, *with* Tex. Tax Code Ann. § 111.016(b). As to the former change, subsection (a) specifically governs sales tax amounts that a person "receives or collects" and, therefore, holds in trust for the State. *See* Tex. Tax Code Ann. § 111.016(a). Thus, this change to proposed section 111.016(b) was a narrowing of the statute's scope—from any taxes owed, to only those amounts actually received or

11

collected. Crawford and Wills contend that because the former change was a narrowing of the statute's scope, the latter change—"knowingly" changed to "wilfully"—must have been intended as a narrowing of the scope of the statute as well.

However, Crawford and Wills cite to no authority for their contention that the narrowing of one aspect of a proposed statute indicates that other changes to the statutory language in the legislative process must also be intended to have a similar narrowing effect. Without additional guidance in the statutory text or the legislative history, it is just as likely that the legislature intended to narrow the statute's scope in one regard by effecting the former change, while simultaneously broadening the statute's scope in another regard via the latter change. We recognize that "when the Legislature looks to another jurisdiction's statute, but modifies rather than adopts some of its provisions, it does so purposefully." *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 497 (Tex. 2001). Here, however, it was an earlier version of the statute that modified the term "wilfully." The enacted version did not. This, if anything, is consistent with a legislative intent *not* to modify the federal statutory language as to the term "wilfully." *See Transportation Ins. Co. v. Maksyn*, 580 S.W.2d 334, 338 (Tex. 1979) ("Courts should be slow to put back that which the legislature has rejected.").

Next, Crawford and Wills rely on Texas case law defining the term "willful" in other contexts. They focus particularly on language in the Texas Supreme Court's opinion in *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115 (Tex. 1984). The supreme court in *Luna* considered a trial court's award of mental anguish damages in a Deceptive Trade Practices Act ("DTPA") suit. The court of appeals had set aside the award for mental anguish because such

12

damages were available where there was proof of a "willful tort, willful and wanton disregard, or gross negligence," but the jury found only that the act was committed "knowingly." *See* 667 S.W.2d at 117. The supreme court reversed the court of appeals' judgment because, based on the continuum of culpable mental states set out in the opinion, knowing conduct was sufficient to satisfy the gross negligence standard. The court stated, "We are not attempting to equate the terms gross negligence, 'knowingly,' 'willful' and intentional. These terms lie on a continuum with gross negligence being the lowest mental state and intentional being the highest." *Id.* at 118. According to Crawford and Wills, the legislature is presumed to have been aware of this *Luna* continuum in enacting section 111.016(b), and the modification of the subsection's language in S.B. 401 from "knowingly" to "wilfully" indicates, based on *Luna*, the legislature's selection of a "higher" mental state.

We note, as an initial matter, that the "continuum" language of the Texas Supreme Court is likely dicta as to the term "willful," given that the court limited its holding to a comparison between the terms "gross negligence" and "knowingly." *See id.* at 117-18. We also note that the court did not explicitly announce what positions the terms "knowingly" and "willful" hold in relation to each other on the continuum. *See id.* at 118. Regardless, we are not persuaded that the court's placement of the term "willful" in a continuum is to be applied unwaveringly beyond *Luna*'s context of mental anguish damages under the DTPA. The term "willful" in a statute is "a word of many meanings, its construction often being influenced by its context." *Paddock v. Siemoneit*, 218 S.W.2d 428 (Tex. 1949) (quoting *Spies v. United States*, 317 U.S. 492, 497 (1943)); *Meisner v. State*, 907 S.W.2d 664, 668 (Tex. App.—Waco 1995, no writ)

13

(quoting *Screws v. United States*, 325 U.S. 91, 101 (1945)). Courts interpreting the term "willful" in different statutes have placed the term on several different points along the *Luna* continuum.[4]

Thus, contrary to Crawford's and Wills's position, the continuum introduced in *Luna* that seems to have placed "willful" between "knowing" and "intentional" has not been universally applied beyond DTPA claims or the imposition of mental anguish damages. We cannot conclude, therefore, that the Texas Supreme Court's treatment of willfulness in *Luna* overcomes the presumption that the term "wilfully" in section 111.016(b) should be interpreted in accordance with federal courts' interpretation of section 6672(a) of the Code. Consequently, we conclude that because the term "willfully" in section 6672(a) has been consistently interpreted to encompass both knowledge and reckless disregard, the term "wilfully" in section 111.016(b) of the tax code likewise encompasses both knowledge and reckless disregard.

---

[4] *See, e.g.*, *In the Matter of Humphreys*, 880 S.W.2d 402, 407 (Tex. 1994) (in the context of federal statute regarding tax evasion, finding that "willfulness . . . means voluntary intentional violation of a known duty"); *Woodhouse v. Rio Grande R.R. Co.*, 3 S.W. 323, 324 (Tex. 1887) ("The word 'willfully' carries the idea, when used in connection with an act forbidden by law, that the act must be done knowingly or intentionally . . . ."); *Morrone v. Prestonwood Christian Acad.*, 215 S.W.3d 575, 582 (Tex. App.—Eastland 2007, pet. denied) (for purposes of liability protection for teachers, comparing "willful misconduct" to "heedless and reckless disregard" and "gross negligence"); *Brown v. State*, 183 S.W.3d 728, 733 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ("A person commits the offense of reckless driving by driving a vehicle in willful or wanton disregard for the safety of persons or property."); *In re Thoma*, 873 S.W.2d 477, 489 (Tex. Rev. Trib. 1994, no appeal) (for constitutional provision regarding discipline of judges, construing "willful" to refer to "a judge acting intentionally, or with gross indifference to his conduct"); *Wheeler v. Yettie Kersting Mem'l Hosp.*, 866 S.W.2d 32, 50 n.25 (Tex. App.—Houston [1st Dist.] 1993, no writ) (considering the terms "heedless and reckless disregard," "willful act or omission," "willful and wanton disregard," and "gross negligence" to be synonymous in the context of Good Samaritan statute); *Louisiana Pac. Corp. v. Smith*, 553 S.W.2d 771, 775 (Tex. Civ. App.—Tyler 1977, no writ) ("There is no difference in legal consequences between a willful disregard of the rights of another and a reckless disregard of same.") (quoting *Emporia Lumber Co. v. League*, 105 S.W. 1167, 1168 (Tex. Civ. App.—San Antonio 1907, no writ)).

Our conclusion finds support in both the object sought to be attained by section 111.016(b) and the consequences of a construction to the contrary. Tex. Gov't Code Ann. § 311.023(1), (5) (West 2005); *Helena Chem. Co.*, 47 S.W.3d at 493 (even when statute not ambiguous on its face, courts may consider other factors to determine legislative intent). Were we to construe the term "wilfully" to require only actual knowledge, responsible individuals such as officers and directors who would potentially be subject to individual liability for a corporate tax delinquency could evade section 111.016(b) simply by delegating all tax responsibilities to administrative staff or outside accountants. Federal courts have taken into account consequences such as this in applying their more expansive interpretation of willfulness in the context of section 6672. According to the Fifth Circuit, if the term "willfully" required a "higher" mental state, a corporate official could thwart the statute's purpose "just by compartmentalizing responsibilities within a business (however small) and adopting a 'hear no evil—see no evil' policy." *Wright*, 809 F.2d at 427. Crawford's and Wills's interpretation could also impair the government's ability to operate efficiently and effectively, as "repeated escape from liability would be possible and the government would be required to monitor corporate affairs daily." *Mazo v. United States*, 591 F.2d 1151, 1157 (5th Cir. 1979). The Fifth Circuit has also recognized the positive consequences of interpreting "willfully" to include reckless disregard. "[W]e believe that the rationale for the broad net of § 6672 responsibility serves a valuable prophylactic purpose: it encourages officers, directors, and other high-level employees to stay abreast of the company's withholding and payment of employee's taxes." *Barnett*, 988 F.2d at 1456-57. According to the senate bill analysis, the purpose of the amendments to section 111.016 was to "enforce[] timely payment of taxes and fees collected

by the Comptroller more efficiently and effectively than current law allow[ed]." Sen. Comm. on Finance, Bill Analysis, Tex. S.B. 401, 74th Leg., R.S. (1995). Requiring actual knowledge to establish section 111.016(b) liability would limit the State's ability to efficiently and effectively collect delinquent taxes where a company is in financial difficulty and its officers have no interest in seeing to it that taxes are remitted.

For purposes of section 111.016(b) of the tax code, we hold that a responsible individual acts "wilfully" if either he has knowledge that taxes are due to the State and yet uses unencumbered funds to pay other creditors, or he recklessly disregards the risk that the taxes may not be remitted to the government. *See Logal*, 195 F.3d at 232.

### *Burden of Proof on Willfulness under Section 111.016(b)*

The district court's Conclusion of Law No. 7 states, "Under the facts of this case, the Comptroller has failed to carry its statutory burden of proof to show that Defendant . . . willfully failed to pay or cause[] to be paid the tax or money, as required by Tax Code § 111.016(b)." In its second point on appeal, the State asserts that the trial court's placement of the burden of proof for the issue of willfulness on the government rather than on the individual defendants was in error.

The State relies, first, on section 111.013 of the tax code for its assertion. Under section 111.013, in a suit involving the collection of state tax, a certificate of the Comptroller showing the tax delinquency is prima facie evidence of: "(1) the stated tax or amount of the tax . . . ; (2) the stated amount of penalties and interest; (3) the delinquency of the amounts; and (4) the compliance of the comptroller with the applicable provisions of this code in computing and determining the amount due." Tex. Tax Code Ann. § 111.013(a) (West 2008). The statute does not,

16

however, make the certificate prima facie evidence on issues other than those stated. In *Parker v. State*, 36 S.W.3d 616 (Tex. App.—Austin 2000, no pet.), for instance, in a suit to collect a corporation's delinquent taxes under section 111.016 from the corporation's owner and director in his individual capacity, this court held that the State retained the burden to prove the amount of tax actually collected by the corporation. *See* 36 S.W.3d at 617-18. This court declared: "We will not shift the burden that requires the State to prove taxes actually collected by requiring Parker to rebut a presumption that all reported taxes were collected." *Id.* at 619.

Section 111.016(b) makes a responsible individual liable for non-payment of collected taxes, but only if the non-payment is willful. *See* Tex. Tax Code Ann. § 111.016(b). This court's refusal in *Parker* to shift the burden to the individual taxpayer on the issue of whether taxes were collected applies equally to the issue of whether the individual acted willfully. A tax certificate does not prove the mental state of a responsible individual. When the State litigates, it occupies the same position as any other litigant, except where specific provision is made to the contrary. *Texas Dep't of Corr. v. Herring*, 513 S.W.2d 6, 7-8 (Tex. 1974). Section 111.013 of the tax code does not except the issue of willfulness in section 111.016(b) from this general rule.

Next, the State cites to federal case law interpreting section 6672. Under federal case law, once the government offers an assessment into evidence, the burden of proof is on the taxpayer as to both his responsible-person status and his willfulness. *See Barnett*, 988 F.2d at 1453. However, the State does not explain why federal case law should apply to section 111.016(b) on the issue of burden of proof. We are not compelled to apply here the rule of construction we applied to construe the meaning of the term "wilfully" in section 111.016(b)—when a Texas statute is modeled

17

after a federal statute, we give weight to the federal courts' construction—because section 111.016 itself contains no language that could be interpreted to allocate the burden of proof on willfulness.

The placement of the burden of proof on the taxpayer in federal case law stems from the "uniform rule" in federal tax law that the taxpayer must pay the full amount of a tax assessment before he can challenge its validity in court. *See Psaty v. United States*, 442 F.2d 1154, 1158 (3d Cir. 1971); *see also Bull v. United States*, 295 U.S. 247, 260 (1935) ("Thus the usual procedure for the recovery of debts is reversed in the field of taxation. Payment precedes defense, and the burden of proof, normally on the claimant, is shifted to the taxpayer."). An exception to this rule arose under section 6672 actions in that the taxpayer could pay only a portion of the assessment and make a claim for a refund, forcing the government to file a counterclaim for the remainder of the assessment. *See Psaty*, 442 F.2d at 1159 (citing *Steele v. United States*, 280 F.2d 89 (8th Cir. 1960)). The federal courts placed the burden of proof on the taxpayer with respect to the government's counterclaim so that there would not be "a substantially greater burden upon a taxpayer who pays his taxes in full and sues for the refund than upon one who makes a partial payment." *Id.* at 1160; *see United States v. Lease*, 346 F.2d 696, 700 (2d Cir. 1965) ("We can see no reason why the taxpayer should be in any better position when he . . . waits until the Government has to resort to enforcing its lien before he attempts to cast doubt upon the underlying tax liability.")

In contrast, there is no "uniform rule" under Texas law that where the State seeks to impose individual liability under section 111.016(b), the individual must pay the tax delinquency and then seek a refund to contest his liability. *See* Tex. Tax Code Ann. § 111.010 (West 2008) (attorney general shall bring suit to recover delinquent state taxes). Thus, the original reasoning

18

behind the federal case law's placement of the burden of proof on taxpayers in a section 6672 action is inapplicable to a tax code section 111.016 action. We decline to extend the federal burden-shifting rule to section 111.016 actions.[5] Regardless of whether the State introduces a certificate of the Comptroller showing the tax delinquency, and thus establishes prima facie evidence on the matters set forth in section 111.013 of the tax code, we hold that the State retains the burden of proof on the issue of willfulness under section 111.016(b) of the tax code.

### Evidentiary Sufficiency

In its final two points on appeal, the State challenges the district court's holding that Crawford's and Wills's failure to pay the collected sales tax on the McCord-Reliant job was not willful. The State bases its challenges on both legal and factual sufficiency of the evidence. Findings of fact in a bench trial are reviewable for legal and factual sufficiency by the same standards as applied in reviewing a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

In reviewing a legal sufficiency challenge, we review the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). As the State has the burden of proof on the issue of willfulness, we will sustain its point on appeal based on legal sufficiency only if the evidence conclusively establishes, as a matter

---

[5] According to the Third Circuit, the public policy behind the taxpayer bearing the burden of proof—on the issue of willfulness specifically—is that "the presumption appropriately requires that corporate officers explain their failure to perform duties imposed upon them by law." *Psaty v. United States*, 442 F.2d 1154, 1160 (3d Cir. 1971). Such a policy would seem to relieve the State of its burden of proof in *any* enforcement action where liability depends on the defendant's mental state, and we decline to apply it here.

of law, the defendant taxpayers' willfulness. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The test is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Wilson*, 168 S.W.3d at 827.

In reviewing a factual sufficiency challenge, we must consider and weigh all the evidence in the record, both supporting and against the finding, to decide whether the judgment should be set aside. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We will set aside the judgment for factual insufficiency only if the evidence that supports the finding of lack of willfulness is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Dow Chem. Co.*, 46 S.W.3d at 242.

*"Knowledge" prong of willfulness*

Under the "knowledge" prong of willfulness, according to federal case law interpreting section 6672 of the Internal Revenue Code, willfulness is proven by evidence that the responsible person had knowledge that taxes were due and yet paid other creditors. *See Barnett*, 988 F.2d at 1457. Willfulness does not require a bad motive or evil intent, but rather a "voluntary, conscious, and intentional act." *Id.*

In its findings of fact, the district court stated, "During the audit period and through the time the Company ceased operations in March 2003, neither Mr. Crawford nor Mr. Wills knew that sales tax had actually been charged to and *collected* . . . on the McCord-Reliant job." (Emphasis added). In its third point on appeal, the State challenges this finding based on legal and factual sufficiency. Wills testified that he did not know tax was collected on the McCord-Reliant job until after the Company ceased operations. Crawford testified that he first learned there was a

20

tax issue on the McCord-Reliant job when the Company's assets were frozen. The State questions the credibility of the defendants' statements, but presented no evidence directly controverting their disavowment of actual knowledge. The trial court is the sole judge of witness credibility and the weight to be given to testimony. *Navasota Res., Ltd. v. Heep Petroleum, Inc.*, 212 S.W.3d 463, 468 (Tex. App.—Austin 2006, no pet.).

Wallace, testifying for the State, admitted that all his contact regarding the tax audit was with Wade. The State asserts that Wade's knowledge that tax was "collected and not remitted" on the McCord-Reliant job was made known to Crawford and Wills, either by an actual communication or by imputed knowledge. Regarding an actual communication of the information, Wills testified that he and Crawford had discussions with Wade regarding the audit. However, there is no evidence that these discussions included the particular issue alleged by the State. Wills testified that the discussions focused on the other tax matter at issue in the audit, and that Wade never informed him or Crawford that the Company had actually collected the tax on the McCord-Reliant job. Crawford's testimony was to the same effect.

The State contends that even if Wade did not communicate the specifics of the McCord-Reliant tax delinquency, his knowledge should be imputed to Crawford and Wills under principles of agency. Wade's power of attorney authorized him to act on behalf of the Company's interests as a taxpayer. However, assuming that Wade's knowledge can be imputed to the Company under agency principles, the State provides no authority for the proposition that the Company's imputed knowledge can, in turn, be imputed to Crawford and Wills as the Company's officers. *See* Restatement (Third) of Agency § 5.03 cmt. g (2006) ("Notice of facts that a principal knows or

21

has reason to know is not imputed downward to an agent."). It appears the State is conflating the "responsible person" and "willfulness" elements for liability under section 6672 of the Code. Whether an individual is a responsible person may involve agency principles. *See Gustin v. United States*, 876 F.2d 485, 491-92 (5th Cir. 1989) ("One does not cease to be a responsible person merely by delegating that responsibility to others . . . ."). We do not, however, find authority in section 111.016(b) to hold every responsible individual in a company liable for the willful actions of a single agent of the company. *See* Tex. Tax Code Ann. § 111.016(b).

Next, the State points to the information contained in the Comptroller's March 7, 2001, sales tax audit, a copy of which was sent to Wills. Wills admitted in his testimony that because of his receipt of the audit, he and Crawford knew there was a tax delinquency. The State argues that this conclusively establishes willfulness because the evidence showed vendors and employees were paid with Company funds after that date. Crawford and Wills argue in response that while the audit showed a tax delinquency, neither knew that the tax had actually been collected. In fact, Wallace admitted in his testimony that nothing in the audit communicated that tax on the McCord-Reliant job had been collected but not remitted. The audit report had a "zero" on its "Tax Collected not Remitted" line. Thus, there was sufficient evidence to support a finding that Crawford and Wills never obtained actual knowledge that tax had been collected until the Company went out of business.[6]

---

[6] The State also points to two admissions by Wills to argue that he knew the tax was collected. Wills admitted in his deposition to being aware the audit showed "there was tax not remitted to the State for the McCord project." However, this admission did not demonstrate knowledge that the tax was collected. Also, Wills admitted at trial that the $158,912.27 amount was included on invoices and monthly sales tax reports and was deposited into the Company's operating account. However, Wills did not admit to his having knowledge of these facts prior to the State's filing of the lawsuit below.

22

In addition to the evidence being sufficient to support the district court's finding that Crawford and Wills had no knowledge that the tax was actually collected, there was sufficient evidence that Crawford and Wills did not have knowledge that the tax delinquency on the McCord-Reliant job had become due.[7] Following receipt of the audit results in March 2001, the Company, through its agent Wade, disputed its obligation to pay the tax delinquency and sought resolution through the Comptroller's administrative hearings process. Consequently, the tax amount did not become "due and payable" until after the Comptroller's decision in the redetermination hearing became final. *See* Tex. Tax Code Ann. § 111.0081(c) (West 2008). Knowledge of the March 7, 2001, audit report, therefore, was insufficient to conclusively establish that Crawford or Wills "wilfully fail[ed] to pay or cause to be paid the tax," because the tax amount had not yet become due. *See Logal*, 195 F.3d at 232.

In accordance with the Comptroller's order, the tax became "due and payable" within 20 days after November 15, 2002. However, the Comptroller's notice was sent to the wrong address.[8] The earliest date on which any evidence shows either Crawford or Wills had actual knowledge of a final determination of tax due on the McCord-Reliant job is January 15, 2003, when

---

[7] It is not clear from the plain language of section 111.016 that knowledge that tax was *collected* constitutes willfulness, or that a lack of such knowledge proves a lack of willfulness. *See* Tex. Tax Code Ann. § 111.016(a), (b). However, the State has not challenged on appeal the district court's conclusion that the defendants' lack of willfulness regarding whether the tax had been collected was sufficient to refute their willfulness under section 111.016(b), and, because we find the evidence sufficient to show that Crawford and Wills had no knowledge (and did not recklessly disregard) that the tax was due, we decline to reach the issue.

[8] The State does not dispute this fact.

apparently Wills received a faxed letter from the Comptroller.[9] Once a responsible individual becomes aware of a past due tax liability, he is considered to act willfully if "he fails to use all unencumbered funds that come into his possession thereafter to pay the delinquent taxes." *Huizinga*, 68 F.3d at 145. Although the State argues that the Company had the "means" to pay the tax, the State presented no evidence that, during the time period subsequent to January 15, 2003, the Company paid unencumbered funds to creditors other than the State.

The evidence is sufficient to support the district court's finding that Crawford and Wills did not have the requisite knowledge to satisfy the "wilfully" requirement of section 111.016(b). The evidence at trial would enable reasonable and fair-minded people to reach the district court's conclusion, and the evidence that supports the district court's finding of lack of knowledge is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

---

[9] Crawford testified that the hold on the Company's accounts occurred on February 3, 2003, which, he alleges, is the first time he received any notification that tax on the McCord-Reliant job was due. Although there is no evidence in the record before us of another date on which the hold may have occurred, the district court found that it occurred in mid-January 2003. The court may have based its finding on (1) Wills's testimony that until he "got the letter of freeze on the accounts," he had not heard or seen anything to notify him that the Comptroller's determination was final, and (2) Wills's letter to the Comptroller, dated January 22, 2003, that proposes a payment plan "in response to my conversations with Kim Bridges of your office and following guidelines described to me in her faxed letter of 1/15/03." We need not consider Crawford's testimony of a February 3 hold because the State has not challenged the district court's findings on this issue on appeal. Even if we were to determine that Wills learned of the tax due on January 15 and yet the hold did not occur until February 3, we would still find the evidence sufficient to show Wills's lack of willfulness under section 111.016(b) because the State presented no evidence that, during the time period subsequent to January 15, 2003, the Company paid unencumbered funds to creditors other than the State.

Willfulness can also be proven if the responsible individual acted with reckless disregard of a known or obvious risk that tax would not be paid over to the government. *Morgan*, 937 F.2d at 285-86. Reckless disregard includes failure to investigate or correct mismanagement after being notified that taxes have not been paid. *Id.* at 286. Mere negligence does not establish willfulness. *Id.*

Although the district court incorrectly concluded that willfulness under section 111.016(b) does not encompass reckless disregard, the court made a finding of no reckless disregard in its Conclusion of Law No. 3: "Mr. Crawford and Mr. Wills did not act recklessly in relying on Ms. Delgado and Mr. Wade with regard to the sales tax responsibilities of the Company." In its fourth point on appeal, the State challenges the legal and factual sufficiency of the district court's finding of a lack of reckless disregard. Regarding Delgado, the bookkeeper who made the error that resulted in the tax nonpayment, Wills testified that she routinely allocated sales as taxable or nontaxable during the four years she had been at the Company, and that she had fifteen years of experience in construction accounting prior to her employment with the Company. She had been with the Company during the previous audit, during which period the Company paid over four million dollars in sales tax to the Comptroller, and the audit showed an error rate of only one-half of one percent. As for Crawford's and Wills's reliance on Wade, Wills testified that in addition to handling an IRS audit "100 percent clean," Wade properly handled the "federal tax returns and the franchise tax returns and the information returns." The State, in

25

response, presented no evidence that prior to its freezing the Company's bank account, Crawford or Wills had reason to suspect that reliance on Delgado or Wade would be reckless.

The State argues that Crawford and Wills acted recklessly by not doing their own research into the tax delinquency upon obtaining knowledge of the 2001 audit. The cases the State cites, to support its argument, that conclude the responsible person under section 6672 of the Code acted willfully under the "reckless disregard" prong are distinguishable.[10] In *Mazo*, the responsible individuals contended that they relied on a company employee who misled them by asserting that he would "take care" of the tax delinquencies, even though that employee had been originally responsible for the tax delinquencies in the first place. *See Mazo*, 591 F.2d at 1155, 1157. The court in *Wright* based its finding of recklessness on the company's small size, its history of noncompliance, the continued participation of the employee who had been responsible for the earlier violation of the company's tax responsibilities, and the "continued parlous state" of the company's finances. *See Wright*, 809 F.2d at 428. The court in *United States v. Vespe*, 868 F.2d 1328 (3d Cir. 1989), found reckless disregard as to a tax quarter because the responsible individual knew that taxes had not been paid for the four quarters immediately following. *See* 868 F.2d at 1335. In *Denbo v. United States*, 988 F.2d 1029 (10th Cir. 1993), the responsible individual knew that the corporation was financially unsound and that there had been tax delinquencies, and relied on the president's claim that "they had everything worked out" even though he knew the

_____

[10] We note that federal case law may not always be ideal authority on the issue of willfulness, since under section 6672 of the Internal Revenue Code the taxpayer bears the burden to establish lack of willfulness, and, as we concluded above, for purposes of section 111.016(b) the State has the burden of proof on willfulness.

president's prior representations regarding tax payments had turned out to be false. *See* 988 F.2d at 1031, 1033-34. Unlike the cited cases, in this case there was no evidence that (1) prior to the Comptroller's freezing of the bank accounts, the Company's finances were troubled, (2) Wade, whom Crawford and Wills relied on to resolve the Company's tax delinquency, had any known history of being irresponsible as to such a tax matter, or (3) the Company had any significant history of sales tax noncompliance.

To satisfy the reckless disregard prong, there must be a "known or obvious risk" that tax is owed but not paid. *See Morgan*, 937 F.2d at 285-86. As noted previously, the evidence was sufficient to establish that Crawford and Wills did not know tax was actually collected on the McCord-Reliant job. Also, as noted previously, according to the evidence, Crawford and Wills did not know of the tax becoming due and payable until the Company's bank accounts were frozen. Vernon Wallace, a senior auditor of the Comptroller, admitted to no personal knowledge that Crawford or Wills received any communication of the audit results. The only basis identified by Jeremy Davies, accounts examiner for the Comptroller, for the determination that Crawford and Wills had knowledge of taxes being collected and due was their having signed sales tax returns during the months at issue. According to Wills, the freezing of the Company's accounts was the first notice that the tax determination was final. Crawford testified that he was "surprised, shocked and panicked" by the State's action in freezing the Company's accounts and did not get an answer from Wade as to his lack of communication regarding the Comptroller's final determination.

The evidence is sufficient to establish that Crawford and Wills did not have the requisite reckless disregard to satisfy the "wilfully" requirement of section 111.016(b). The evidence

27

at trial would enable reasonable and fair-minded people to reach the district court's conclusion, and the evidence that supports the district court's finding of lack of recklessness is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

### *Conclusion*

We conclude that willfulness under section 111.016(b) of the tax code encompasses both actual knowledge and reckless disregard, and we, therefore, vacate the district court's Conclusions of Law No. 5 and No. 6. We also conclude that the State bears the burden to establish a responsible individual's willfulness under section 111.016(b). Finally, we conclude that the evidence was legally and factually sufficient to establish that Crawford and Wills did not willfully fail to pay or cause to be paid the delinquent tax on the McCord-Reliant job. We affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   August 21, 2008

28